Argued September 11, 1969, affirmed February 27, 1970

## KLAMATH FALLS ASSEMBLY OF GOD, *Appellant, v.* STATE HIGHWAY COMMISSION ET AL, *Respondents.*

465 P. 2d 697

*Stanley C. Jones,* Klamath Falls, argued the cause for appellant. With him on the briefs were J. Anthony Giacomini and Richard T. Flynn, Klamath Falls.

*Robert D. Puckett,* Klamath Falls, argued the cause for respondent Klamath County. *Leslie B. Hampton,* Assistant Attorney General, Salem, argued the cause for respondent State Highway Commission. With

them on the brief were Robert Y. Thornton, Attorney General, G. E. Rohde, Assistant Attorney General and Chief Counsel of Oregon State Highway Commission, Salem, and George H. Proctor, Klamath Falls.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN,* DENECKE and HOLMAN, Justices.

O'CONNELL, J.

This is an action for inverse condemnation arising out of the construction of a limited access throughway between Klamath Falls and Malin, Oregon. Plaintiff, whose property abuts the new throughway, contends that it has been deprived of its right of access to a public road. The trial court found for defendant and plaintiff appeals. The relevant facts are as follows.

In 1944 the Oregon State Highway Commission entered in its official minutes a "Survey Resolution" to construct a public highway between Klamath Falls and Malin and to acquire rights of way and access rights along the proposed route. Klamath County was the owner of a large portion of land along the proposed route, including a section adjoining Alameda Street (later Alameda Avenue), then a city street. The highway plan contemplated that Alameda Street would be widened to the north and incorporated as part of the route.

Pursuant to this plan, Klamath County entered into a land sale contract to sell to the State of Oregon, in fee simple, a sixty-foot wide strip along the north edge of Alameda Street. The agreement stated that the land was to be used for a highway and that the

---

* Goodwin, J., resigned December 19, 1969

county would include in all its future conveyances of parcels adjoining the highway a restriction prohibiting access. In 1945 the conveyance to the state was actually made. The state recorded the deed, which contained no mention of the access rights provision. None of the other documents were recorded nor was reference made to them in the deed.

In 1953 the county sold the land adjoining the sixty-foot strip to private parties. No mention was made in these deeds of any restriction of abutter's access rights, although the deeds did refer to the conveyance by the county of the sixty-foot strip to the state for highway purposes. Through mesne conveyances plaintiff acquired a portion of this land in June, 1961. Plaintiff and its predecessors in title duly recorded their deeds.

In September, 1961 the Oregon State Highway Commission entered in its official minutes a resolution which again declared its intent to construct a Klamath Falls-Malin highway. This resolution declared that the highway would be a limited access throughway within the meaning of the Throughway Law, Oregon Laws 1947 (now ch 226). The route along Alameda Street in the vicinity of plaintiff's property was retained in the same form as set forth in the 1944 resolution. Construction was commenced in 1965 and completed in 1966.

Prior to the opening of the newly constructed highway Alameda Street had retained its character as a city street and had not been used as a part of the state highway system.

Plaintiff contends that the entire right of way obtained by the state in 1944, including both Alameda Street and the adjoining sixty-foot strip, became a state highway at that time. Since the recorded deeds in plaintiff's chain of title gave no notice of access

restrictions, plaintiff claims that when it bought land adjoining this "highway" in 1961, it obtained access rights as an abutting landowner.

Defendant answers that a highway, insofar as it would give rise to access rights to abutting owners, does not come into existence until a roadway is actually constructed and dedicated and that since there was no actual roadway on the sixty-foot strip until the throughway was constructed, plaintiff had no rights to lose. Defendant further contends that even if the sale of the sixty-foot strip could create a "highway" and corresponding access rights in the adjoining land, such rights were waived by Klamath County, the then owner of the adjoining land.① Assuming that plaintiff would not be bound by such waiver without notice, defendant claims that plaintiff had constructive notice of the waiver at the time of purchase and cannot now assert that any such rights exist.

The trial court found that even if it is assumed that access rights arose at the time the resolution to create the highway was entered in the commission's minutes, plaintiff had constructive notice of the 1944 agreement between Klamath County and the State Highway Commission and was therefore put on notice that the access rights in the property it purchased had been waived.

When plaintiff purchased the land from Klamath County the deed records showed only that the county had previously conveyed an adjoining strip to the State

---

① "* * * [T]he statute authorizes the acquisition by condemnation of a fee which is essentially unlike the taking for a conventional highway, and is essentially like the fee which a private individual would acquire by purchase, which of course, would imply no right of access over the vendees' land by the vendor" State Highway Com. v. Burk et al, 200 Or 211, 229, 265 P2d 783 (1954).

of Oregon "for highway purposes." Plaintiff would not know from the deed record for what specific purpose the state had purchased the land. If one were to infer from the recorded deed that the land was purchased for a proposed highway, the deed would not reveal whether the proposed highway was to be with or without access. Plaintiff could not, therefore, justifiably assume from the deed records that any right of access arose out of that conveyance in favor of any adjoining property, including its own. The only way plaintiff could learn that the state proposed to construct a highway on the abutting strip and thus give rise to a right of access in the abutting land was to consult the official minutes of the State Highway Commission. If plaintiff had consulted these minutes, it would have been apprised by the 1944 Survey Resolution that the proposed highway was to be a non-access highway and that the purchase of the land by the state would not give rise to any access rights in the abutting land.[2]

Further inquiry would have disclosed the agreement between the county and the state restricting the abutting owners' right of access. The trial court correctly held that plaintiff was put on notice that the access rights in the land purchased by it had been waived.

The judgment is affirmed.

---

[2] State Highway Com. v. Burk et al, *supra,* holding that when land is condemned for a new non-access highway, owners of property adjoining the condemned land are not entitled to compensation for loss of access rights since no such access rights ever came into existence. Cf. Schnider v. State, 38 Cal2d 439, 443, 241 P2d 1, 3 (1952) which adds: "[A] resolution creating a freeway gives adequate notice that no new rights of access will arise unless they are specifically granted."