Argued and submitted July 24, reversed and remanded on cross-appeal; appeal
dismissed as moot September 24, appellant - cross-respondent's petition for recon-
sideration filed October 8 allowed by opinion November 26, 1997
See 151 Or App 430 (1997)

James L. AKINS,
Trustee of the Akins Loving Trust DTD 2/3/93,
*Appellant - Cross-Respondent,*

*v.*

Lynda S. VERMAST,
*Defendant,*

*and*

Jack A. REYNOLDS
and Vivian Reynolds,
*Respondents - Cross-Appellants.*

(95 CV 0119; CA A94814)

945 P2d 640

Michael C. Wetzel argued the cause for appellant - cross-respondent. With him on the briefs was Fowler & McNair.

Mark Lansing argued the cause for respondents - cross-appellants. With him on the briefs was Sloan & Lansing.

Before Landau, Presiding Judge, and Leeson, Judge, and Richardson, Senior Judge.

LEESON, J.

## LEESON, J.

In this foreclosure action, plaintiff appeals from a judgment declaring that defendants'[1] purchase money mortgage has priority over plaintiff's trust deed. Defendants cross-appeal from the trial court's refusal to cancel the warranty deed from defendants to Lynda S. Vermast and plaintiff's trust deed. We review *de novo*. ORS 19.125(3). We conclude that the warranty deed from defendants to Vermast should be canceled and that plaintiff's trust deed also should be canceled. Consequently, we reverse and remand on defendants' cross-appeal and dismiss plaintiff's appeal as moot.

In 1994, defendants subdivided a parcel of land and arranged to sell it to Vermast for $40,000. Defendants agreed that Vermast would make a down payment of $5,000 at closing and that they would carry the $35,000 balance on a promissory note and trust deed. The property already was subject to a promissory note and trust deed (the Kellenbeck trust deed), which defendants had executed in favor of the owners from whom defendants had purchased the property in 1976. Unbeknownst to defendants, Vermast arranged to borrow $21,500 from plaintiff.[2] Vermast told plaintiff that she needed the money to purchase the property from defendants and that she would secure his loan with a first trust deed on the property. According to plaintiff, at the time he agreed to loan Vermast the money he knew that defendants lived adjacent to and held title to the property, but he "assumed" that defendants would convey title to Vermast at closing because Vermast was going to make full payment on the property at

---

[1] For purposes of this opinion, "defendants" refers only to Jack A. and Vivian Reynolds. Defendant Lynda S. Vermast did not appear in the action below. A default order was entered against her before trial, the case was argued without her participation, and judgment subsequently was entered against her, foreclosing her interest in the property. She is not a party to this appeal.

[2] Vermast placed the following advertisement in a local newspaper:

"Wanted: $20,000 at 15% I.O. for 2 yrs., secured by 1/4 ac. city lot. Lot's purchase price, $40,000. Need to close quickly, preliminary done, no brokers. 471-0726 lv. msg[.]"

Plaintiff responded to that advertisement with an offer to make the loan. Plaintiff and Vermast later agreed to increase the loan amount to $21,500, with the added conditions that Vermast prepay six month's interest ($1,500) at closing and secure the loan by a first trust deed in favor of plaintiff.

that time. Some time before closing, plaintiff and Vermast agreed that Vermast would not use all of the loan money borrowed from plaintiff to purchase the property from defendants.[3] Plaintiff "assumed" that Vermast had some other source of money, that there would be some amount "left over" after the transaction between Vermast and defendants or that Vermast would need some amount for closing costs.

On the day of closing in June 1994, plaintiff and defendants went to Rogue River Title Company (Rogue River) at different times and did not encounter each other. Of the $21,500 loan that Vermast received from plaintiff, she paid $5,000 to defendants for a down payment on the property, leaving her with a balance owing to defendants of $35,000. Vermast gave $1,500 to plaintiff for prepayment of interest and owed plaintiff $21,500.[4] Defendants conveyed a warranty deed to Vermast, and Vermast executed trust deeds in favor of both defendants and plaintiff. Rogue River recorded the warranty deed to Vermast and then recorded plaintiff's trust deed minutes before it recorded defendants' trust deed. Vermast left Rogue River with $15,000 in cash.

Vermast made no further payments to defendants or plaintiff. Defendants and plaintiff did not become aware of each other's interests in the property until December 1994, when both parties sought to foreclose. Defendants subsequently filed an action against Rogue River alleging damage because of Rogue River's negligence in "plac[ing] [defendants] in a third secured position, behind both the note and trust deed [defendants] originally executed [to Kellenbeck] and behind another note and trust deed that Vermast executed in favor of [plaintiff]." Defendants and Rogue River settled that action, and defendants' complaint was dismissed with prejudice.

■ Plaintiff subsequently filed this action against Vermast and defendants. Vermast did not appear, and a default

---

[3] The record does not show when plaintiff agreed that Vermast would retain cash at closing, but plaintiff concedes that he knew before closing that she would do so. Plaintiff initialed a paragraph in the Individual Lender's Instructions executed five days before closing giving her authority to retain cash at closing.

[4] The equity in the property at the time of these transactions was approximately $24,000.

judgment was entered against her. *See* note 1. Plaintiff then moved for summary judgment against defendants, arguing that his trust deed had priority over defendants' trust deed because it had been recorded first, that defendants were judicially estopped from claiming otherwise because of their action against Rogue River and that defendants had waived any purchase money priority to which they were entitled when they signed documents that included a statement that "owner will carry 2nd trust deed." Defendants filed a cross-motion for summary judgment, arguing that they were not estopped from asserting a different priority theory from the one that they had alleged against Rogue River. Defendants also argued that they thought that "2nd trust deed" referred to the Kellenbeck deed and that they were entitled to purchase money priority. In any case, they argued, the warranty deed from defendants to Vermast and the deed from Vermast to plaintiff should be canceled[5] because plaintiff was on inquiry notice of Vermast's fraud and was, therefore, not a bona fide purchaser. The court did not rule on the motion for summary judgment, because the parties requested that the court resolve the matter in a stipulated facts trial. The court ruled in favor of defendants. In its letter opinion, it explained:

> "It is clear to the Court that both [plaintiff] and [defendants] were victimized by defendant Vermast. * * * Defendants Reynolds requests that the Court find that their deed to Vermast was based on a fraudulent conveyance and should therefore be set aside as well as the subsequent deed from Vermast to [plaintiff]. * * * I do not believe that the case at bar compares to the *Stevens* [*v. American Savings Institution, Inc.*, 289 Or 349, 613 P2d 1057 (1980)] case in terms of notice attributable to the subsequent purchaser. * * * It is my opinion that defendants Reynolds hold a purchase money mortgage and are entitled to priority by virtue of that status."

The court also held that judicial and collateral estoppel do not apply and that defendants' purchase money mortgage on the

---

[5] As discussed in note 9, below, the deed from Vermast to plaintiff is voidable. If, by court action, a party succeeds in having a deed voided, it is said to be *canceled*—a term that refers specifically to written instruments. *See generally* 12A CJS *Cancellation of Instruments* § 2 (1980).

property had priority over plaintiff's trust deed, and it entered judgment accordingly.

■ Because it is dispositive, we address defendants' cross-appeal first. They argue that the trial court erred in refusing to cancel the warranty deed from defendants to Vermast. In the light of the trial court's implicit finding and our finding that Vermast committed fraud on defendants, we agree. *See Stevens*, 289 Or at 351 (conveyance induced by fraud canceled); *Webb v. Stewart*, 255 Or 523, 527, 469 P2d 609 (1970) (same). Defendants next argue that plaintiff was not a bona fide purchaser for value without notice because "he was on inquiry notice of Vermast's scheme." Because plaintiff was not a bona fide purchaser for value without notice, defendants contend, the trial court erred in refusing to cancel the warranty deed from defendants to Vermast and, consequently, to cancel the trust deed from Vermast to plaintiff. Plaintiff responds that "the fact that Vermast was to receive money back is irrelevant to the question of notice."

■ The general rule of priority of real estate interests is that a mortgage that is recorded first has priority over mortgages recorded subsequently. ORS 93.640(1).[6] In other words, a subsequent purchaser who acquires a mortgage in good faith for valuable consideration and records first has priority. However, a mortgage may be canceled because it was induced by fraud. *Stevens*, 289 Or at 351; *Webb*, 255 Or at 527. If a conveyance to a purchaser is canceled, any interests that that purchaser purported to grant are canceled also, except as to subsequent purchasers who claim as an affirmative defense that they are bona fide purchasers for value without notice.[7] *Stevens*, 289 Or at 354; *Webb*, 255 Or at 528. To qualify as a bona fide purchaser, a subsequent purchaser must have paid for and acquired the interest without any knowledge or notice of the fraud. *Id.*

---

[6] A trust deed is deemed to be a mortgage on real property. ORS 86.715.

[7] If fraud is "in factum," such as a forged deed or a situation analogous to forgery, the deed is void *ab initio* and will not support subsequent title in any person. By contrast, if fraud is in the inducement, the deed is merely voidable, and a bona fide purchaser may acquire good title. *Bennion Ins. Co. v. 1st OK Corp.*, 571 P2d 1339, 1341 (Utah 1977).

The bona fide purchaser rule applies to lenders as well as to purchasers. *See High v. Davis*, 283 Or 315, 584 P2d 725 (1978) (for bank's mortgage to be superior in priority, it must have been taken in good faith for value and without notice); *see generally* 55 Am Jur 2d, Mortgages, § 308 (a mortgagee is entitled to protection as purchaser for these purposes). A mortgagee has the burden of proving bona fide purchaser status. *Stevens*, 289 Or at 354. Notice may be actual or constructive. *High*, 283 Or at 333. Constructive notice may be "record notice" (a recorded document) or "inquiry notice" (a duty to inquire). *Id.*; *Spady v. Graves*, 307 Or 483, 488 n 3, 770 P2d 53 (1989). If a mortgagee had notice of facts that would "provoke a reasonable and prudent person to investigate [the] prospective purchase," *Stevens*, 289 Or at 356, but did not inquire, the mortgagee is charged with that knowledge and is not a bona fide purchaser. *Id.* at 357-58; *High*, 283 Or at 334; *Webb*, 255 Or at 536.[8]

In this case, the question is whether plaintiff was on notice of facts that should have caused him to investigate whether Vermast was engaging in fraud. Defendants rely on *Stevens* for their argument that plaintiff was on notice of Vermast's fraud and, hence, was not a bona fide purchaser because defendants continued to possess the property after they were to have sold it. They contend that plaintiff had more notice of fraud than the holder of the canceled deed in *Stevens*.

In *Stevens*, the owners of an 85-acre parcel of farm and timber land contracted to sell the entire parcel to American Savings. The sale agreement contained two conditions: No timber was to be cut until half of the purchase price was

---

[8] *Stevens* and *Webb* involved grantor possession as notice to the purchaser of fraud or prior interest. In *High*, by contrast, inquiry notice was derived from notations in a preliminary title report that mentioned memberships granting hunting and fishing rights, "some of which are recorded." The mortgagee in that case was charged with knowledge of all of the memberships because he should have asked about the number and nature of those interests. Similarly, in *K. Falls Assem. of God v. Highway Com.*, 255 Or 211, 214-15, 465 P2d 697 (1970), a deed to the State Highway Commission of a 60-foot strip for "highway purposes" without any provision for access rights did not permit the plaintiff to presume or assert access rights. The plaintiff was on inquiry notice that it would not have access rights, because it would have discovered the limits of its rights had it inquired into the official minutes of the State Highway Commission.

paid, and one of the owner-sellers, Stevens, was to be allowed to live on the property for 90 days after closing. A representative of American Savings induced the sellers to sign a deed and mortgage containing neither of those conditions. Meanwhile, American Savings was negotiating with a third party, Publishers, regarding sale of the timber portion of the land. Publishers purchased the timberland after receiving a title report indicating that American Savings held title to the entire property. Stevens subsequently sued American Savings for fraud and also sought to set aside the conveyance to Publishers. The Supreme Court held that Publishers was not a bona fide purchaser because Stevens continued to occupy the farmland, which was a discrepancy between possession and title that placed Publishers on notice to inquire. *Stevens*, 289 Or 357-58.

According to defendants, their continued possession and maintenance of the parcel they sold to Vermast put plaintiff on notice of Vermast's fraud. Plaintiff responds that the discrepancy between possession and title that was dispositive in *Stevens* did not occur in this case, because defendants' deed to Vermast and plaintiff's trust deed were recorded within minutes of one another. We agree with plaintiff that *Stevens* does not aid defendants with respect to their argument that their continued possession of the property put plaintiff on notice of Vermast's fraud. Because both transactions were concluded on the same day, defendants' possession would not have given plaintiff notice of defendants' interest before the conclusion of the transactions.

Nonetheless, defendants contend, plaintiff should have suspected fraud when Vermast asked to receive some of plaintiff's loan money as cash at closing after telling plaintiff that she needed the money to buy the property. Plaintiff responds that "the cash back did not give rise to further inquiry." On the facts of this case, we agree with defendants. Vermast placed a newspaper advertisement indicating that she wanted to borrow $20,000 in order to purchase property priced at $40,000 and that the loan would be secured by the property. Plaintiff stipulated to the fact that Vermast represented to him that she needed more—$21,500—to purchase the property. By telephone, plaintiff agreed to loan Vermast $21,500 at 15 percent interest for that purpose, and she

agreed to prepay six months' interest in advance. Plaintiff assumed that defendants would convey clear and unencumbered title to Vermast at closing, because she would pay full price for the property. Vermast subsequently told plaintiff that she wished to retain part of the loan as cash. Vermast's request should have called into question plaintiff's belief, based on Vermast's representation, that she needed $21,500 to complete the purchase. In fact, Vermast retained $15,000 of that amount in cash and paid only $5,000 toward the purchase of the property. The record does not show whether plaintiff knew that Vermast intended to take $15,000, almost three-quarters of the loan, in cash. In any case, plaintiff should have inquired, because learning that Vermast intended to retain $15,000 should have called into question plaintiff's assumption that Vermast intended to purchase clear and unencumbered title to the property at closing. Plaintiff believed that *he* was protected by the first trust deed that he bargained for and, therefore, he chose to assume vaguely that Vermast had some other source of money, that some would be "left over," or that she needed some of the loan money to pay closing costs, a comparatively small sum. In the same way that the plaintiffs in *High* and *K. Falls Assem. of God* were not permitted to make assumptions regarding facts about which they should have inquired, we will not permit plaintiff to do so here. Under these circumstances, we conclude that plaintiff was on inquiry notice of Vermast's fraud; he is charged with knowledge of it and, therefore, he is not a bona fide purchaser entitled to protection. Consequently, both the warranty deed that Vermast obtained from defendants and the trust deed that plaintiff received from Vermast should have been canceled.

■ On appeal, plaintiff argues that the trial court erred in holding that defendants' trust deed was entitled to priority over plaintiff's trust deed. He also argues that defendants should be estopped under the doctrine of judicial estoppel from contending otherwise. In the light of our disposition on defendants' cross-appeal, canceling the deeds from defendants to Vermast and from Vermast to plaintiff, those arguments are moot.

On cross-appeal, reversed and remanded for entry of judgment canceling Vermast's warranty deed and plaintiff's trust deed; appeal dismissed as moot.