In re Tony Lee WRAY, Debtor.

Lois K. Murphy, Trustee, Plaintiff,

v.

Tony Lee Wray and Raleigh Wray, Defendants.

Bankruptcy No. 97–01326.

Adversary No. 00–6345.

United States Bankruptcy Court, D. Idaho.

Feb. 9, 2001.

Jed W. Manwaring, Evans, Keane, Boise, Idaho, for Plaintiff.

Laura E. Burri, Ringert Clark Chartered, Boise, Idaho, for Defendant, Raleigh Wray.

## MEMORANDUM OF DECISION

TERRY L. MYERS, Bankruptcy Judge.

The Court is asked to resolve two motions. The first is Defendants' motion for summary judgment. The second is Plaintiff's motion for leave to file an Amended

Complaint. Both motions were argued on November 6 and taken under advisement subject to a lengthy period provided for filing affidavits and briefs. The matter has now been fully submitted and reviewed.

## BACKGROUND AND FACTS

Tony Lee Wray ("Tony") filed a chapter 13 Petition on May 1, 1997. Just shy of three years later, on March 1, 2000, Tony converted his case to a liquidation under chapter 7. Lois Murphy ("Trustee" or "Plaintiff") was appointed chapter 7 Trustee in Tony's case. On September 19, she filed the instant adversary proceeding against Tony and his father Raleigh Wray ("Raleigh").

As set forth in the schedules Tony filed in 1997,[1] Tony owned and resided in property at 818 Iowa Street in Boise, Idaho worth $63,000 and subject to a $54,000 deed of trust. He also disclosed real property located at 1319 Z Avenue in LeGrande, Oregon (the "LeGrande Property").[2] Tony declared the nature of his interest as "Reversionary interest (father has a life estate in the property)." Tony claimed this interest was worth $500. *See* Schedules A, D.

The Trustee's Complaint contends that the life estate was unrecorded and thus Raleigh's interest could be avoided by the Trustee as a judicial lien creditor or bona fide purchaser ("BFP") under § 544(a) of the Bankruptcy Code. Complaint, at p. 2, ¶¶ 7, 8 and 10.

Raleigh moved for summary judgment seeking dismissal of the Complaint, arguing that the statute of limitations for avoidance actions found in § 546(a) had expired. Soon after the filing of that motion, the Trustee sought leave to file an Amended Complaint which eliminated reference to

§ 544 of the Code. Instead it asked for a "declaratory judgment" that the LeGrande Property was property of the estate, free of Raleigh's interest which was allegedly void under Oregon law, and thus subject to "turnover" under § 542 of the Code.

The Rule 56(e) affidavits filed subsequent to hearing establish that Raleigh has lived at the LeGrande Property for some forty years. In 1966, secured debt on the property was paid and the property was thus held by Raleigh free and clear of liens. In order to protect the LeGrande Property from an outstanding judgment, Raleigh deeded the property to his wife Helen.

In 1992 a deed was executed by Helen conveying the LeGrande Property to Tony.[3] The Wrays contend that it was understood at the time of this 1992 transfer that Raleigh and Helen could continue to reside at the LeGrande Property, notwithstanding the conveyance to Tony, for the balance of their natural lives. They would pay no rent to Tony but would pay for the LeGrande Property's upkeep, insurance and real property taxes.

In August 1996 Tony executed a deed which attempted to convey a life estate in the LeGrande Property to Raleigh. That deed, reciting consideration "of $10.00 and stuff" granted Raleigh "the full possession, use and control [of the described property] during his natural life or however long he resides on the property and keeps the property as his principal residence." This deed, which was recorded on August 8, 1996, contained the correct street address for the LeGrande Property, but it contained an erroneous legal description. By virtue of the erroneous legal description, the attempted conveyance of a life estate in 1996 does not appear of record. *See*

---

**1.** The Court takes judicial notice of its files in Case No. 97–01326. Fed.R.Evid. 201(c), (f).

**2.** The LeGrande Property, according to deeds and title reports, is located on "Z" Avenue. This was apparently mistranscribed on Tony's schedule A as "2nd" Avenue.

**3.** A second parcel of property in Oregon was also subject to conveyance among the family members. It is not at issue in this proceeding and will not be discussed.

Lot Book Report attached to the Trustee's Affidavit of December 19, 2000.

It is upon these facts that the legal arguments of the parties are premised.

## DISCUSSION AND DISPOSITION

### A. MOTION FOR SUMMARY JUDGMENT

#### 1. Standards for summary judgment.

Summary judgment may be granted if, when the evidence is viewed in a light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); Fed.R.Bankr.P. 7056; *Anguiano v. Allstate Insurance Company*, 209 F.3d 1167, 1169 (9th Cir.2000); *Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir.1998).

. . .

The initial burden of showing that there is no genuine issue of fact rests on the moving party. *Margolis*, 140 F.3d at 852. If the non-moving party bears the ultimate burden of proof on an element at trial, that party must make a showing sufficient to establish the existence of that element in order to survive a motion for summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir.2000). Failure to sustain this burden as to any required element of a cause of action is fatal to that cause, even if issues are shown to exist as to other elements. A complete failure on one element necessarily renders the other elements "Immaterial" whether factually disputed or not. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. *Esposito v. Noyes (In re Lake Country Investments)*, 255 B.R. 588, 00.4 I.B.C.R. 175, 178 (Bankr.D.Idaho 2000).

#### 2. Limitation of action under § 546(b).

■ The Code grants trustees several powers by which transfers and interests may be avoided. These powers are, however, not unlimited. Section 546(a) provides:

(a) An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—

(1) the later of—

(A) 2 years after the entry of the order for relief; or

(B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or

(2) the time the case is closed or dismissed.

Raleigh asserts that the September 19, 2000 filing of the Complaint comes too late because § 546(a)(1)(A) established a deadline for suit two years after the initial chapter 13 petition was filed on May 1, 1997.[4] The Court concludes that Raleigh is correct.

In *Panhandle Trustee Services, Inc. v. First Interstate Bank of Idaho, N.A. (In re Saccomanno)*, 85 I.B.C.R. 285 (Bankr.D.Idaho 1985), the Court held that the successor chapter 7 Trustee in a converted chapter 13 case was not entitled to a new two year window for avoidance actions but only had that portion of the original two years which remained at the time of conversion. 85 I.B.C.R. at 286. More recent case law confirms this conclusion. *See, Salisbury v. Mirage Resorts, Inc. (In re Mizuno)*, 223 F.3d 1050, 1053–56 (9th Cir.2000) (discussing cases, former § 546, and amended § 546).

---

[4]. The parties agree that § 546(a)(1)(A) is key to the present matter. No issues are raised as to § 546(a)(1)(B) or (a)(2).

The Trustee responds to this authority with two arguments in defense of the timeliness of her original Complaint: an analysis of the effect of conversion under § 348 of the Code, and reliance on the principle of equitable tolling.

### 3. Effect of conversion.

The Trustee argues that the term "order for relief" in § 546(a)(1)(A) should be interpreted to refer to the conversion date not the initial filing date. She relies on § 348 which provides:

(a) Conversion of a case from a case under one chapter of this title to a case under another chapter of this title constitutes an order for relief under the chapter to which the case is converted, but, except as provided in subsection (b) and (c) of this section, does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief.

(b) Unless the court for cause orders otherwise, in sections 701(a), 727(a)(10), 727(b), 728(a), 728(b), 1102(a), 1110(a)(1), 1121(b), 1121(c), 1141(d)(4), 1146(a), 1146(b), 1201(a), 1221, 1228(a), 1301(a), and 1305(a), and 1305(a) of this title, "the order for relief under this chapter" in a chapter to which a case has been converted under section 706, 1112, 1208, or 1307 of this title means the conversion of such case to such chapter.

The Trustee has attempted to read this section in such a fashion that the conversion date is the date of the order for relief for purposes of § 546(a)(1) even though § 546 is not listed in § 348(b). The Trustee provides no decisional authority supporting her interpretation.

It is sufficient to note, without fully here restating the details of the Trustee's argument, that it tortures the plain language of this section. The much more obvious construction of § 348 is that conversion does not change the date of the order for relief "except as provided in subsection (b) and (c)." Subsection (b) lists the Code provisions where the order for relief means the

conversion date. Section 546 is not among them. This plain reading should control. *Hartford Underwriters Insurance Co. v. Union Planters Bank, N.A. (In re Hen House Interstate, Inc.)*, 530 U.S. 1, 120 S.Ct. 1942, 1947, 147 L.Ed.2d 1 (2000).

■ This approach is supported by *Smith v. Kennedy (In re Smith)*, 235 F.3d 472 (9th Cir.2000), which recognized that as a general proposition "conversion does not reset the date of the order for relief." *Id.* at 477. The court, in reliance upon *In re Bell*, 225 F.3d 203, 213 (2nd Cir.2000) held that except for those certain specifically enumerated sections in § 348(b) and (c), § 348 "does not effect a change in the date of ... the order for relief." *Id.* The interpretation suggested by the Trustee is rejected.

### 4. Equitable tolling.

■ The Trustee next argues that she can avoid operation of § 546 through the doctrine of equitable tolling. *In re United Insurance Management, Inc.*, 14 F.3d 1380 (9th Cir.1994) establishes that, in proper circumstances, equitable tolling may apply to § 546(a)(1). The Court of Appeals explains:

Under the equitable tolling doctrine, where a party "remains in ignorance of [a wrong] without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party."

*Id.* at 1384, quoting *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991). The Court proceeded, however, to deny application of the doctrine in that case, as a matter of law, based on the plaintiff's lack of diligence:

Nevertheless, when application of equitable tolling turns on the plaintiff's diligence in discovering a cause of ac-

tion, courts may hold, as a matter of law, that the doctrine does not apply. "[T]he extent to which a plaintiff used reasonable diligence is tested by an objective standard. A district court may, therefore, grant a summary judgment motion if the uncontroverted evidence irrefutably demonstrates that a plaintiff discovered or should have discovered the fraud but failed to file a timely complaint."

. . .

Because a chapter 7 trustee has a statutory obligation to "investigate the financial affairs of the debtor [, ...] collect and reduce to money the property of the estate ..., and close such estate as expeditiously as is compatible with the best interests of parties in interest," 11 U.S.C. §§ 704(1), (4), equitable tolling's requirement of diligence is particularly acute in the bankruptcy context.

14 F.3d at 1385–86 (internal citations omitted). *See also, In re Hosseinpour–Esfahani*, 198 B.R. 574, 578–80 (9th Cir. BAP 1996) (court has power to equitably toll the bar of § 546(a)(1) except where claimant fails to act diligently). *Accord, In re Gardenhire*, 209 F.3d 1145, 1151 (9th Cir. 2000) (equitable tolling, if available, requires proof that asserting party acted with reasonable diligence); *Hadlock v. Dolliver (In re Dolliver)*, 255 B.R. 251, 255–56 (Bankr.D.Maine 2000) (equitable tolling found not available in a § 727(e) context, by reason of lack of due diligence).

■ The bar of § 546(a)(1) ran here in May, 1999 well before the conversion to chapter 7 in March, 2000. The question, therefore, concerns the diligence not of the Plaintiff but of the chapter 13 trustee during the first two years of the case.

Despite being provided and having utilized an opportunity for post-hearing submissions, nothing was filed by the Trustee relative to her predecessor trustee's due diligence. The Trustee instead merely argues in briefing that Tony's schedules, which listed the LeGrande Property as being subject to a life estate in favor of his father, constituted a misrepresentation which "would have been relied upon and [lead] a reasonable Trustee not to investigate further under a chapter 13 setting." Plaintiff's Memorandum in Opposition to Summary Judgment (hereafter "Brief"), at p. 4. This is not only supposition, it is wrong.

■ The chapter 13 trustee, in the exercise of due diligence, would need to verify the existence and bona fides of the alleged life estate. In order for the chapter 13 Trustee to determine that Tony's plan appropriately paid creditors what § 1325(a)(4) requires, he would need to determine that the disclosed life estate was valid and determine the value of Tony's residual (or other) interest in this affirmatively disclosed property. And in addition to the trustee's obligation to evaluate all factors relevant to the confirmation standards of § 1325, he also was required to investigate the financial affairs of the debtor. *See* § 1302(b), incorporating § 704(4).

The Plaintiff has failed to establish the prerequisite of reasonable diligence, and the doctrine of equitable tolling is unavailable.

■ There is authority to the effect that ongoing "positive concealment" of the facts by the adverse party may eliminate the burden of due diligence and delay the commencement of the limitation period until the time of actual discovery. *See, e.g., Moratzka v. Pomaville (In re Pomaville)*, 190 B.R. 632 (Bankr.D.Minn.1995):

When fraud goes undiscovered because the defendant has taken positive steps after commission of the fraud to keep it concealed, § 541(a)(1) is tolled until there is actual discovery of the fraud. *Tomera v. Galt*, 511 F.2d 504, 510 (7th Cir.1987 [*sic*]). "[I]f the wrongdoer adds to his original fraud affirmative efforts to divert or mislead or prevent discovery, then he gives to his original act a continuing character, by virtue of which he deprives it of protection of the statute until discov-

ery." *Id.* In such instances there is no obligation on the part of the plaintiff to use due diligence to discover the fraud. *In re Lyons,* 130 B.R. 272, 280 (Bankr. N.D.Ill.1991).

*Id.* at 636–37. The applicability of this "corollary" to the equitable tolling doctrine is here at least inferentially urged. The Trustee has stated in her Affidavit that:

> The Debtor misrepresented in Schedule A and in conversations that the father [Raleigh] had a recorded life estate on the property.

Affidavit at p. 1, ¶ 2. Her counsel in briefing makes the same point, asserting that contrary to Tony's representations "no written or recorded life estate existed." Brief, at p. 4.

There are several problems with the positive concealment theory on these allegations and the present record:

1. Schedule A did not allege or represent that the life estate was recorded, or that it was written. It said only "father has a life estate in the property."

2. Any alleged representations about recordation "in conversations" were made to the Plaintiff, and occurred at a time when the statutory period of § 546(a)(1)(A) had already run. There is no evidence submitted as to any representations to, or concealment of facts from, the chapter 13 trustee.[5]

3. The representation, if made, was factually correct. The life estate *was* created by a written document (the deed of August 2, 1996), and that document *was* recorded (on August 8, 1996). *See* Exhibit D to the Affidavit of Tony Wray.[6]

4. Representations of the sort alleged would not amount to concealment, or impede a trustee's ability to ascertain and confirm the relevant, critical facts. Those facts are not testimonial but, rather, are matters of public record.

The Court concludes that this "positive concealment" corollary to the doctrine of equitable tolling is also unavailing.

### 5. Conclusion on Defendant's Motion.

The Plaintiff has not adequately supported her suggested legal interpretation of either § 546(a) or § 348. Further, she has not established that equitable tolling provides a means to save the untimely action pleaded in the original Complaint. As was true in *United Insurance Management,* the absence of reasonable diligence, proven on an objective basis, is fatal to the argument.

In light of the burdens of Rule 56 and the commands of *Celotex,* the Plaintiff's failure on this issue warrants entry of summary judgment for Raleigh dismissing the cause of action set forth in the original Complaint. The action is time barred under § 546(a)(1)(A).

### B. MOTION FOR LEAVE TO AMEND COMPLAINT

In apparent recognition of the difficulties faced under § 546(a) on her § 544(a) avoidance action, the Trustee filed a motion for leave to amend the Complaint. This motion was heard at the same time as the motion for summary judgment, and was also taken under advisement.

---

**5.** The Trustee's Affidavit does not specify the dates and places of the conversations, but argument at hearing indicated that they were at the time of the § 341(a) meeting in the chapter 7 case. In any event, the Trustee can only testify as to conversations she had with Tony and her statement is taken in that context. This is important because if concealment is to provide relief here, there must have been concealment from the chapter 13 trustee effective to suspend the statute until conver-

sion. Only then would concealment from the Plaintiff Trustee be relevant.

**6.** Though her affidavit and briefing might lead one to think otherwise, the Trustee's action is not based on the contention that the grant of a life estate was oral instead of written, or that it was not recorded. Rather, the Trustee argues that due to the erroneous legal description in the deed, the recording which occurred was ineffective to provide notice.

The Amended Complaint and the Trustee's briefing indicate the nature of the alternative theory advanced. According to these pleadings, the Trustee contends that the LeGrande Property is titled to and owned by Tony; that Raleigh "has resided in [that property] and refuses to acknowledge the Debtor's ownership or turnover [the property] to the Trustee"; that the LeGrande Property is "property of the estate" and should be turned over under § 542; and that Trustee is entitled to a "declaratory judgment" to this effect. First Amended Complaint, at p. 2, ¶¶ 7, 8, 9 and prayer.

The Trustee explains that this is something other than an avoidance action:

> In this adversary, the Trustee need not seek avoidance under 11 USC § 544, as there is nothing to avoid. Therefore, the statute of limitations in 11 USC § 546 does not apply. The property at issue is titled in the Debtor's name and is "property of the estate." Pursuant to 11 USC § 541, 542, and 543, the property should be turned over to the trustee. The Trustee seeks only a declaratory judgment that the property is "property of the estate" and should be turned over to the Trustee of the same.

Notice of Hearing and Motion for Leave to File First Amended Complaint (Nov. 3, 2000), at p. 2. Of course, the Trustee wants turnover free of any right or interest of Raleigh, possessory or otherwise. In briefing, she explains that this can occur because Raleigh's interest should be determined to be void under Oregon law.

■ The motion for leave to assert the Amended Complaint is governed by the provisions of Fed.R.Civ.P. 15 incorporated by Fed.R.Bankr.P. 7015. Amendments are to be liberally allowed absent a showing of undue prejudice, bad faith, or futility. *Wussler v. Silva (In re Silva)*, 99.2 I.B.C.R. 77, 80 (Bankr.D.Idaho 1999).

■ The Court finds little indication of prejudice should the amendment be allowed, and no issue of bad faith. The rub is in regard to whether the amendment is futile. According to *Miller v. Rykoff–Sexton, Inc.*, 845 F.2d 209 (9th Cir.1988):

> A motion for leave to amend may be denied if it appears to be futile or legally insufficient. *Gabrielson v. Montgomery Ward & Co.*, 785 F.2d 762, 766 (9th Cir.1986). However, a proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense. *Baker v. Pacific Far East Lines, Inc.*, 451 F.Supp. 84, 89 (N.D.Cal.1978); *see generally* 3 J. Moore, Moore's Federal Practice ¶ 15.08[4] (2d ed.1974) (proper test to be applied when determining the legal sufficiency of a proposed amendment is identical to the one used when considering the sufficiency of a pleading challenged under Rule 12(b)(6)).

*Id.* at 214.[7]

■ All of Tony's rights in the LeGrande Property are of course property of the estate. § 541(a)(1). But the mere filing of bankruptcy does not expand these rights beyond what existed under applicable nonbankruptcy law at filing. *In re Hiatt*, 00.3 I.B.C.R. 131, 133 (Bankr.D.Idaho 2000); *In re Braker*, 125 B.R. 798, 801 (9th Cir. BAP 1991).

---

7. This Court has previously summarized the Rule 12(b)(6) test:

> The purpose of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable here under F.R.B.P. 7012, is to test the legal sufficiency of a plaintiff's claims for relief. In determining whether a plaintiff has advanced potentially viable claims, the complaint is to be construed in a light most favorable to the plaintiff and its allegations taken as true... The complaint should not be dismissed for a failure to state a claim unless it appears that the plaintiff can prove no set of facts in support of the claim which would entitle plaintiff to relief.
>
> *Quad–Cities Constr., Inc. v. Advanta Business Services Corp. (In re Quad–Cities Constr., Inc.)*, 254 B.R. 459, 465 (Bankr.D.Idaho 2000).

The estate's ability to assert a greater interest against the LeGrande Property than what Tony could have asserted absent bankruptcy is necessarily premised on the Trustee's status as a hypothetical BFP. The Trustee's standing to make the assertion that Raleigh's interest is void can only come from § 544(a)(3).

The Court addressed a situation similar to this is *Rakozy v. Johnson*, 90 I.B.C.R. 152, 153 (Bankr.D.Idaho 1990). In *Rakozy*, the debtors owned a residence in California at the time of filing. The premises were occupied by a relative of the debtors who claimed an interest of some sort in it. The trustee sought a judgment "quieting title" in him in his capacity as trustee. *Rakozy* at 152. The action was brought after the limitation period of § 546(a) had passed.

The Court recognized that the trustee's actions were necessarily premised on his status as bankruptcy trustee, and thus § 544 was implicated. The defendant's motion to dismiss the action as time barred under § 546(a) was granted.

Here, as in *Rakozy*, § 544(a) is the only way the Trustee can attempt to bring into the estate an interest in the property greater than what the debtor held at filing.[8] And here, as in *Rakozy*, the effort is barred by § 546(a)'s statute of limitation. That the trustee in *Rakozy* sought to "quiet title" and the Trustee here seeks a "declaratory judgment" is a distinction without a difference. Both essentially use linguistic legerdemain to avoid confronting § 544 and § 546.

In addition, the Court must note the problems with the Trustee's alleged BFP status.

In *Fitzgerald v. Thornley*, 19 B.R. 548, 82 I.B.C.R. 70 (Bankr.D.Idaho 1982), the debtor owned and entered into a contract to sell residential property to the Thornleys, and the Thornleys took possession. The Trustee sought to avoid the Thornleys' interest on the ground that the transfer was not of record and thus avoidable in light of the trustee's hypothetical BFP status under § 544(a). The Court held the status of BFP must be determined by reference to state law, and that under Idaho law "prospective purchasers are put on inquiry and have constructive notice" of a possible interest of parties in physical possession of the subject property. 82 I.B.C.R. at 71.

*In re Sale Guar. Corp.*, 220 B.R. 660, 669 (9th Cir. BAP 1998), *aff'd*, 199 F.3d 1375 (9th Cir.2000) reached the same conclusion. It held that the rights of BFP's under § 544(a)(3) are determined under state law and that, under the California law applicable in that case, a purchaser takes subject to prior interests of which it has actual or constructive notice. 220 B.R. at 665. Moreover, it held that a purchaser is charged with knowledge of "the identity of the person in possession of the property." 220 B.R. at 666. "Where possession is inconsistent with the interest of the party from whom the purchaser intends to acquire title, the purchaser has a duty to inquire about the rights of the occupant." *Id.*, citing *In re Weisman*, 5 F.3d 417, 420–21 (9th Cir.1993).

The Trustee argues that no reported Oregon case law is similar to *Thornley*. Brief, at 6. However, *Akins v. Vermast*, 150 Or.App. 236, 945 P.2d 640 (1997) establishes:

> Notice may be actual or constructive.... Constructive notice may be "record notice" (a recorded document) or "inquiry notice" (a duty to inquire).... If a mortgagee had notice of facts that would "provoke a reasonable and prudent person to investigate [the] prospective purchase ... but did not inquire, the mortgagee is charged with that knowledge and is not a bona fide purchaser.

---

8. The residual or reversionary interest Tony held was and is property of the estate, § 541(a)(1), and the Trustee is entitled to value and administer it.

945 P.2d at 643 (internal citations omitted). The court further noted the Oregon Supreme Court had previously held that a party could not be a BFP because there "was a discrepancy between possession and title that placed [that party] on notice to inquire." 945 P.2d at 644, citing *Stevens v. American Savings Institution, Inc.*, 289 Or. 349, 613 P.2d 1057, 1061 (1980).[9]

 The factual submissions of the parties establish that, at all times relevant to this action, Tony lived in Boise and Raleigh resided at the LeGrande Property. This possession was effective constructive notice of Raleigh's possible interest, and defeats the BFP status Trustee needs in order to prevail.

The Court is sensitive to the fact that under ordinary circumstances the 12(b)(6) issue would be briefed and argued only after the amended pleading was allowed. Here, however, both parties have invited the Court to determine whether the Amended Complaint states a viable cause of action on this record. The Trustee has provided affidavits and authorities in support of the idea that the Amended Complaint is not futile and represents a legally cognizable action. The parties are deemed to have waived any procedural infirmity in considering the issue at this time.

The *Rykoff–Sexton* test for determining the sufficiency of a proposed amendment, when applied to this record and under applicable bankruptcy and nonbankruptcy law, requires the Court to conclude that the amendment is and would be futile. The Motion for leave to amend will therefore be denied.

## CONCLUSION

Based upon the foregoing, the Motion of Defendant, Raleigh Wray, for summary

judgment on the original Complaint based upon the statute of limitations found in § 546(a)(1)(A) of the Bankruptcy Code will be granted and Plaintiff's cause of action under § 544(a) will be dismissed. The Motion of Plaintiff, Trustee Lois Murphy, for leave to file an Amended Complaint will be denied. Counsel for Defendant shall submit a proposed form of Order accordingly.

---

9. *Stevens* established that the burden of proving the status of BFP is on the party asserting that status, and that possession by someone not in title places the purchaser under a duty to inquire, and charges him with knowledge of all facts he might have learned through a diligent inquiry. 613 P.2d at 1060–61. The intermediate appellate decision which *Stevens* affirmed also stated: "[O]ur Supreme Court has held on several occasions that the duty of one claiming to be a bona fide purchaser of land to inquire into its possession at the time of purchase is not discharged by merely relying on recorded deeds." 43 Or.App. 191, 602 P.2d 669, 671 (1979).