## WOMAN'S CHRISTIAN TEMPERANCE UNION V. TAYLOR ET AL.

1. The authority to act as agent of a corporation may, in some cases, be inferred from facts and circumstances. If the directors or managers of a corporation knowingly permit one to act for them in the usual course of dealing within their charter powers, such silent acquiescence may be held to clothe the individual with the powers of a duly authorized agent. But, to have this effect, it should be made to appear that the acts performed were within the charter powers, or in the usual course of business of the corporation.

2. One of the privileges of a corporation is to own real estate, and the unauthorized use of a corporate name in connection with a private enterprise, foreign to the corporate purposes of the corporation, does not necessarily bind it.

*Appeal from County Court of Lake County.*

THE facts are sufficiently stated in the opinion.

Mr. N. F. Cleary and J. C. Fitman, for appellants.

Messrs. Gaston and Simmonds and D. J. Haynes, for appellees.

Beck, C. J.    The record in this cause does not inform us for what special purposes or objects the defendant corporation (appellant here) was organized.    We might infer, from the name chosen, that the objects in view were either to advance the cause of religion or temperance, or both.    In order to sustain the judgment rendered below, it would seem to be necessary to assume, in absence of any proof of the fact, that the charter powers included the management of a hospital.

The action was brought against the defendant in its corporate name of "The Woman's Christian Temperance Union."    The goods were ordered at various times by one Mrs. E. J. Burns, who styled herself "matron" of the hospital, and who represented to the plaintiffs that she was authorized by the defendant to purchase the medicines for the use of the hospital.

It sufficiently appears that the defendant had notice of the name under which Mrs. Burns was conducting the business, and that she was holding herself out as matron of the institution.    Mrs. Burns states, in her deposition, filed in the cause, that she was employed by the society in that capacity, and that she and her daughter were to receive $100 per month.

This testimony, however, is positively contradicted by two of the trustees of the defendant, Mrs. Burnett and Mrs. Murray, the former the treasurer, and the latter one of the vice-presidents of the defendant.

Both say the society never had or conducted a hospital; that it owned a building and leased it to Mrs. Burns for the purpose of being used by her as a hospital, to be conducted on her own account and at her own expense, and that she was to pay as rent for the building, the sum of

$10 per month, for the first two months, and thereafter to increase the rent as her business increased. They further say that the society had no notice of the running of this account until suit brought.

The authority to act as agent of a corporation may, in some cases, be inferred from facts and circumstances. If the directors or managers of a corporation knowingly permit one to act for them in the usual course of dealing within their charter powers, such silent acquiescence may be held to clothe the individual with the powers of a duly authorized agent. But, to have this effect, it should be made to appear that the acts performed were within the charter powers, or in the usual course of business of the corporation.

If the record before us disclosed the facts that one of the objects of the defendant corporation was to conduct a hospital at Leadville, or that it had been engaged in such an enterprise, we might be able to sustain the judgment. It could then be said that the conducting of such an institution was within the corporate objects of the association, or appertained to its usual business operations, which fact, considered in connection with the facts in proof, that the defendant owned a building which was used for hospital purposes, that defendant's corporate name was used as the name of the hospital, and that the person in charge, and who managed its affairs, styled herself "Matron of the Woman's Christian Temperance Union Hospital," and under this appellation made monthly reports to the officers of the corporation, of receipts, expenses and general workings of the hospital, we would not hesitate to say, under such circumstances, that the matron in charge of such an institution had implied authority from the proper officers to purchase necessary medicine for the patients under treatment in the institution. But the mere ownership of the building, and the use of the defendant's corporate name by the self-styled "matron," lose their significance in the ab-

sence of proof that the keeping or conducting of a hospital appertained, in any manner, to the corporate purposes of the defendant, or that it had ever engaged in such an undertaking. One of the privileges of a corporation is to own real estate, and the unauthorized use of a corporate name in connction with a private enterprise, foreign to the purposes of the organization of the corporation, does not necessarily bind it.

The fact testified to, that the president of the defendant inquired about the bill sued upon, after it had been run, said it ought to paid, and that she would see it paid, and that she admitted the correctness of a bill for meat furnished the institution, excusing the delay in payment by the statement that money was due the hospital from the county, for the care of county patients, would afford strong presumptive proof of defendant's liability if the preliminary facts above mentioned were in evidence. Otherwise, the president may have been acting wholly outside the scope of her authority in the instances mentioned, as defendant's witnesses in fact say she was.

As the case is presented to us it looks as if the plaintiffs have been guilty of carelessness. They furnished drugs and medicines to the hospital from August 5, 1881, to March 24, 1882, without making inquiry of any officer of the defendant whether the so-styled matron was authorized to contract such indebtedness in the defendant's name, and without notifying any officer of the defendant that a bill was being run in defendant's name.

Two of the defendant's officers swear that by the rules of the corporation it is necessary to have authority from the board of trustees in order to contract debts in the name of the defendant, and that neither the president, Mrs. Calkins, nor the said Mrs. Burns ever obtained such authority.

Mrs. Calkins is dead, and plaintiffs are deprived of the benefit of her testimony; and while Mrs. Burns testifies that she was authorized by the defendant to purchase the

supplies in question, it must be borne in mind that her
view of the relation which she bore to the defendant is
squarely contradicted by two witnesses, and she admits
the bringing of a suit against the corporation to test her
rights, which was decided against her.

For the reasons assigned the judgment must be re-
versed and the cause remanded for a new trial, and it is
so ordered.

*Reversed.*