Ottie KUEHN, f/k/a Otto Kuehn, Plaintiff-Appellant,

v.

H. T. KUEHN, Bonnie Kuehn, Paul A. Davis, Steven Yates, Martin Mullally, S. Yvonne Mullally, Bob D. Beebe, Glenda T. Beebe, Charles H. Rosenquist, Richard N. Brown, Jeffrey B. Selby, Public Trustee of the County of Eagle, the Empire Savings Building and Loan Association, and all persons who claim any interest in the subject matter of this action, Defendants-Appellees.

No. 81CA0314.

Colorado Court of Appeals, Div. III.

Dec. 24, 1981.

Rehearing Denied Jan. 14, 1982.

Wegher & Fulton, P. C., Richard W. Breithaupt, David R. DeMuro, Denver, for plaintiff-appellant.

Hackethal, McNeill & Aucoin, P. C., George C. Aucoin, Lakewood, for H. T. and Bonnie Kuehn.

Welborn, Dufford, Cook & Brown, Miles C. Cortez, Jr., Denver, for Charles H. Rosenquist, Richard N. Brown and Jeffrey B. Selby.

Towey & Zak, Edward B. Towey, Charles G. Michaels, Denver, for Paul A. Davis,

Steven Yates, Martin Mullally, S. Yvonne Mullally, Bob D. Beebe, Glenda T. Beebe and Empire Sav. Bldg. and Loan Ass'n.

STERNBERG, Judge.

In this quiet title action brought under C.R.C.P. 105, Ottie Kuehn appeals the summary judgment entered in favor of all defendants except H. T. (Ted) Kuehn and Bonnie Kuehn. We affirm.

Among the stipulated facts were these: Vail Associates, Inc., conveyed to Ottie parcels number 1, 2, 3, and an easement over and above parcel 4 in Vail Village, by warranty deed dated August 2, 1967, and recorded August 10, 1967. Ottie conveyed to Vail Real Estate Investment Company (the corporation) the same property by warranty deed dated August 9, 1967, and recorded August 10, 1967. Before this time, he acquired title to parcel number 5 but did not transfer that property to the corporation at the time.

The incorporators and initial board of directors of the corporation were three legal secretaries employed by the firm that had prepared the incorporation papers. An annual report was filed by the corporation on April 18, 1968, signed by one John Amato, as assistant secretary. Little else was done by the corporation. No by-laws were adopted, no shares of stock issued, no meetings held, no corporate minutes of meetings were drafted or adopted, and no corporate books or records were maintained. On October 20, 1970, the corporation was declared defunct and inoperative by the Secretary of State.

On February 11, 1972, Ottie by power of attorney, empowered his brother Ted to grant, bargain, sell, and convey Ottie's interest in all of his property. That power of attorney remained operative until it was revoked on February 16, 1979. By a document dated January 31, 1973, and recorded November 18, 1975, Ottie assigned to Ted all of his right, title, and interest to the corporation, and irrevocably appointed Ted as attorney-in-fact to transfer all of Ottie's stock in the corporation. On that same day, by quitclaim deed recorded November 18, 1975, Ottie conveyed to his brother and sister-in-law, Ted and Bonnie, all of his interest in parcels number 1, 2, 3, and 5, and the easement over parcel number 4.

By quitclaim deed dated September 24, 1975, and recorded November 18, 1975, John Amato conveyed to Ted and Bonnie all of his interest in the property. Ted, signing as "president," and Bonnie, as "secretary" of the corporation, signed a warranty deed dated October 6, 1975, and recorded November 18, 1975, purporting to convey to themselves parcels 1, 2, 3, 5, and the easement in parcel 4.

By quitclaim deed dated January 7, 1976, and recorded June 17, 1976, Vail Associates, Inc., conveyed to Ted and Bonnie its fee simple interest in parcel number 4. By subsequent warranty deeds from Ted and Bonnie, title to portions of the property at issue was conveyed to defendants Rosenquist, Brown, and Selby. Some of the property was conveyed by warranty deeds from these defendants to defendants Yates, Davis, the Mullallys, and the Beebes. It was stipulated that all of these defendants were bona fide purchasers for value without notice.

Ottie, who had left the country in 1968, returned ten years later and procured quitclaim deeds from the three legal secretaries who were the incorporators and original directors. He claimed ownership to the corporate property by these deeds from the "surviving directors of the last acting board of directors." See § 7–8–122, C.R.S.1973.

The trial court found that there were sufficient undisputed facts before it to permit summary judgment pursuant to C.R.C.P. 56(b). The court ruled that since the conveyance from the corporation to Ted and Bonnie was voidable and not void, that conveyance would not be set aside to the detriment of the other defendants. The court also found that Ted was a *de facto* officer of the corporation and that as to the other defendants who were subsequent purchasers for value without notice, Ottie is estopped to deny the authority placed in Ted and Bonnie by his own acts many years

prior to this subsequent conveyance of the property.

Ottie contends that Ted was not a *de facto* officer of the corporation and therefore did not possess the authority to sell the property to the other defendants. A *de facto* officer is defined as one who, under color of authority, exercises a corporate office. *H. Henn, Handbook of the Law of Corporations* § 222 (2d ed. 1970). The underlying policy for the doctrine of *de facto* officers is the protection of the interests of the public and individuals dealing with such "officers." 2 *W. Fletcher, Cyclopedia of the Law of Private Corporations* § 384 (Rev. ed. 1969).

By clothing Ted with the indicia of a corporate officer through the power of attorney, the assignment, and the quitclaim deed, Ottie gave Ted *de facto* officer status. Where an act performed on behalf of the corporation by such an officer is authorized by the articles of incorporation, it will bind the corporation as against innocent third parties. *Woman's Christian Temperance Union v. Taylor*, 8 Colo. 75, 5 P. 826 (1884); *Union Gold Mining Co. v. Rocky Mountain National Bank*, 2 Colo. 248 (1873). Here, the corporation was authorized in its articles of incorporation to sell its real property.

The authority and powers of corporate officers and agents are governed by the ordinary rules of agency. *H. Henn, supra*, § 224. *See Bliss v. Harris*, 38 Colo. 72, 87 P. 1076 (1906). Under agency law, an agent acquires apparent authority to act when his principal causes third parties to believe the agent is so authorized. *W. Seavey, Handbook of the Law of Agency* § 8 at 13 (1964). A principal, who either intentionally or negligently causes a third party to act on an agent's apparent authority, will be estopped to deny that authority if the third party has detrimentally relied on the principal's representation to such an extent that it would be unjust to deny that authority. *Franks v. City of Aurora*, 147 Colo. 25, 362 P.2d 561 (1961); *Johnson v. Neel*, 123 Colo. 377, 229 P.2d 939 (1951).

By signing the power of attorney, assignment, and quitclaim deed, all of which were subsequently recorded, Ottie put all innocent third parties on notice that Ted was empowered to act with regard to the real estate in question. *See Gamble v. Cornell Oil Co.*, 260 F.2d 860 (10th Cir. 1958); *Page v. Fees-Krey, Inc.*, Colo., 617 P.2d 1188 (1980); § 38–35–109, C.R.S.1973 (1980 Cum. Supp.). Rosenquist, Brown, and Selby were bona fide purchasers for value without notice of Ted's lack of authority to act. Ottie is, therefore, estopped to deny the sale between Ted and any subsequent purchasers without notice.

This conclusion is buttressed by § 38–30–144(2), C.R.S.1973, which provides:

> "Any corporate instrument affecting title to real property, executed by the president, vice president, or other head officer of the corporation, in the form required or permitted by law, shall be deemed to have been executed with proper authority in the usual course of business, and shall be binding and conclusive upon the corporation as to any bona fide purchaser, encumbrancer, or other persons relying on such instrument."

The signed documents empowering Ted to act on behalf of Ottie ultimately put the wheels in motion to bind the corporation as to any bona fide purchasers including the defendants in question.

Summary judgment is appropriate where, as here, the admitted facts demonstrate that a party cannot prevail. *Abrahamsen v. Mountain States Telephone & Telegraph*, 177 Colo. 422, 494 P.2d 1287 (1972); *O. C. Kinney, Inc. v. Paul Hardeman, Inc.*, 151 Colo. 571, 379 P.2d 628 (1963). The parties stipulated to the material facts, and the issues raised by the motion for summary judgment under C.R.C.P. 56(b) were properly resolved as a matter of law. *Enger v. Walker Field*, 181 Colo. 253, 508 P.2d 1245 (1973).

Judgment affirmed.

KIRSHBAUM and TURSI, JJ., concur.