**Doyle D. UPSON, Petitioner,**

v.

**GOODLAND STATE BANK & TRUST COMPANY, Respondent.**

**No. 91SC24.**

Supreme Court of Colorado,
En Banc.

Jan. 13, 1992.

Machol, Davis and Michael, P.C., Jacques A. Machol, III, Roger Moore, Denver, for petitioner.

Notarianni & Notarianni, Aldo G. Notarianni, Denver, for respondent.

Chief Justice ROVIRA delivered the Opinion of the Court.

We granted certiorari to review the decision of the Colorado Court of Appeals in *Upson v. Goodland State Bank & Trust Company,* 797 P.2d 845 (Colo.App.1990). This case requires us to determine whether a forged request for a release of a deed of trust can form a valid basis for the release of that deed by the public trustee. We conclude that it cannot, and therefore reverse the judgment of the court of appeals.

I

In June 1981, George W. Green, Jr., executed a promissory note in favor of the petitioner, Doyle Upson, for $105,000. The note was secured by a first deed of trust on improved real property (Dawson Street property) owned by Green and located in Arapahoe County. The deed of trust was duly recorded by the Arapahoe County Clerk and Recorder. Land Title Guarantee Company provided Upson with title insurance for the transaction.

In August 1983, Green obtained a loan for $150,000 from North American National Bank (North American) in exchange for execution of another first deed of trust on the Dawson Street property. In order to accomplish this, Green, or some unknown person acting on his behalf, prepared a fraudulent promissory note marked "Paid in full, Doyle Upson," and forged Upson's signature on a request to the public trustee to release the deed of trust.

Land Title sent the request for release of deed of trust and the fraudulent promissory note to the public trustee of Arapahoe County. The public trustee released Upson's deed of trust in December 1983. She then recorded both the release and North American's deed of trust, believing all prerequisites to the release were met.

In June 1984, Green obtained a replacement loan for $175,000 from Goodland State Bank & Trust Company (Goodland Bank), pledging the Dawson Street property as security. The North American deed of trust was released as part of the Green–Goodland Bank transaction. Upson was unaware of any of these transactions.

Green defaulted on his note to Goodland Bank and the bank foreclosed on the property and obtained a public trustee's deed on April 24, 1986. The bank then sold the property to a third person.

Green continued to make payments on the Upson loan until March 1986. When payments ceased, Upson attempted foreclosure, but the Arapahoe County public trustee refused to foreclose because she found that Upson's deed of trust had been released in 1983.

Upson then brought this action against Green, Goodland Bank, North American, and Land Title arguing that his deed of trust had priority over any ownership or security interest of Goodland Bank. Early in trial, North American was dismissed by stipulation of the parties. The trial court dismissed the action against Goodland Bank on the grounds that Goodland Bank was an innocent bona fide purchaser for value, without notice of the forged request to release. The trial court also granted Land Title's motion to dismiss. Upson received a judgment in rem against Green because service was made by publication.

The court of appeals affirmed, holding that the release of a deed of trust by the public trustee upon receipt of the request for release and underlying promissory note marked "Paid in full," both of which were purportedly signed by the beneficiary of the trust deed, was not void despite the forged signatures. The court of appeals found that Goodland Bank was a bona fide purchaser for value, having no notice, actual, constructive or inquiry, of any defect to clear title; that the fraudulent actions made the release voidable, but not void; and that Goodland Bank's deed of trust had first priority.

## II

Upson contends that the court of appeals erred in finding the forged request for relief voidable, but not void. He argues that the forged signature on the request constituted fraud in the factum, and thus, the release of the deed of trust is void. He further asserts that, despite Goodland's position as a bona fide purchaser, its deed of trust is subject to his first deed of trust.

Goodland argues that although the request was forged, the release was knowingly executed by the public trustee, and therefore, the release is only voidable, not void. Goodland asserts that it had the right to rely on the executed release placed of record by the public trustee.

Section 38-37-123(1), 16A C.R.S. (1982),[1] prescribes the manner in which a deed of trust may be released:

> Deeds of trust to the public trustee, upon compliance with the provisions of such deeds of trust, shall be released by the public trustee *upon the request of the beneficiary, or assignee,* of such trust deed, or the agent or attorney thereof, and upon the production of *the original cancelled note* as evidence that the indebtedness secured by said trust deed has been paid or that the purposes of said trust have been fully satisfied; ...

(Emphasis added.)[2] The two requirements necessary for a valid release were not met here. One, the beneficiary, Upson, never requested a release, and two, the original note was never produced.

The public trustee holds property in trust as security for payment of a debt. The authority of a public trustee is limited by statute. *See* § 38-37-105, 16A C.R.S. (1982).[3] When the public trustee released the Upson deed of trust, without receiving the original promissory note and without a request by Upson, she acted without statutory authority and thus exceeded the scope of her authority. The question then is what is the effect of the public trustee's act after she failed to comply with the statute.

In Colorado a void deed cannot pass title. *Concord Corp. v. Huff,* 144 Colo. 72, 76, 355 P.2d 73, 75 (1960). Other courts have stated that where a deed is forged, it can-

1. This statute has been repealed and reenacted in ways which are not applicable to this case. *See* § 38-39-102, 16A C.R.S. (1991 Supp.).

2. The statute also sets forth options available where the original note is unavailable, none of which are applicable to this case.

3. Reenacted as § 38-37-104, 16A C.R.S. (1991 Supp.).

not convey title to that real estate. "There can be no such thing as a bona fide holder under a forged deed, whose good faith confers any rights against the party whose name has been forged, or those claiming under him." *VanderWall v. Midkiff*, 166 Mich.App. 668, 421 N.W.2d 263, 270 (1988). *See also 1st Coppell Bank v. Smith*, 742 S.W.2d 454 (Tex.App.1987) (one's status as a bona fide purchaser is immaterial in the face of a forged instrument). *Rasmussen v. Olsen*, 583 P.2d 50 (Utah 1978) (forged deed is void, even a bona fide purchaser takes nothing by it). *Jackson v. Lynn*, 94 Iowa 151, 62 N.W. 704 (1895) (deed fraudulently taken from third party holding it in escrow until conditions of sale were met was void, even as to subsequent purchasers for value and without notice). *Otero v. City of Albuquerque*, 22 N.M. 128, 158 P. 798 (1916) (grantee fraudulently obtained possession of a deed placed in escrow and recorded it; the court found the deed was void and transferred no title). In *Horvath v. National Mortgage Company*, 238 Mich. 354, 213 N.W. 202 (1927), the court found the deed void, despite the fact that the plaintiff actually signed it not understanding that it was a deed. Those who subsequently innocently acquire interests under an instrument with a genuine signature obtained through fraud are in no better position than if they had purchased the property with notice of a defect. *Id.* 213 N.W. at 204. "Deeds are held invalid [when obtained through forgery because] the grantor ... cannot be said to have executed the instrument." *Cumberland Capital Corp. Inc. v. Robinette*, 57 Ala. App. 697, 331 So.2d 709, 714 (1976).

The logical result of these cases, which we find persuasive, is that if a deed procured through fraud is invalid and cannot transfer title, a release obtained through a fraudulent request is also invalid. Just as a forged deed is void, and even a good faith purchaser for value has no claim as against the "purported grantor's title," *Gioscio v. Lautenschlager*, 23 Cal.App.2d 616, 73 P.2d 1230, 1232 (1937), a forged request for release is void, and there can be no release without a valid request. And, just as a mortgage based on a void deed has no legal

effect, *Lange v. Wyoming National Bank of Casper*, 706 P.2d 659, 662 (Wyo.1985), a release based on a void request has no legal effect.

Without a valid release, the beneficiary maintains priority. Unfortunately, the subsequent bona fide purchaser for value suffers this loss, but the rights of a subsequent bona fide purchaser for value are necessarily subject to the conditions precedent to a release of a deed of trust, including authority to release, and presentation of the original promissory note.

Goodland relies on *Delta County Land & Cattle Company v. Talcott*, 17 Colo. App. 316, 68 P. 985 (1902), to support its contention that as a bona fide purchaser it has priority. In *Delta County*, the court of appeals found that where there is a fraudulent release, but there is nothing in the record which impeaches the release, a subsequent bona fide purchaser for value will be protected in his purchase. *Delta County* is distinguishable. In the case before us we have a statute setting forth the requirements for a valid release by the public trustee. In *Delta County* a *private* trustee, under no statutory duty, released a trust deed reciting full payment on the note and that the beneficiary requested the release. In fact, the note had not been paid and the beneficiary had not requested a release. In *Stetler v. Winegar*, 75 Colo. 500, 226 P. 858 (1924), this court agreed with the court of appeals and held in favor of an innocent purchaser as against a defrauded assignee of a note secured by a mortgage. *Id.* at 503–04, 226 P. at 859. In *Stetler*, however, the assignee "had the opportunity to demand and receive ... an assignment of the mortgage, which he was entitled to have placed on the public records." *Id.* at 505, 226 P. at 860. The assignee did not take advantage of the statutes, and the court found that because the assignee failed to protect himself, his equity was inferior to the equity of the subsequent purchaser of the mortgaged property who relied on a recorded release executed by the original mortgagee after he had sold and assigned the promissory note secured by the mortgage. *Id.* at 505,

226 P. at 860. Upson followed all precautions in protecting his security interest; he is without fault.

While the purpose of the recording act is "to render titles to real property and every interest therein more secure and marketable ...," § 38–34–101, 16A C.R.S. (1982), thereby protecting subsequent bona fide purchasers for value, it should not be at the expense of prior in time innocent parties.

We reverse the judgment of the court of appeals and remand to that court for further proceedings consistent with this opinion.