Georgiy I. SVANIDZE and Mind Consortium, Inc., Plaintiffs–Appellants,

v.

Jeffrey L. KIRKENDALL, Grand Victorian, LLC, and Citywide Banks, Defendants–Appellees.

No. 05CA1699.

Colorado Court of Appeals, Div. III.

Aug. 9, 2007.

Appel & Lucas, P.C., Garry R. Appel, Denver, Colorado, for Plaintiffs–Appellants.

Karsh, Fulton, Gabler & Joseph, P.C., Seymour Joseph, Denver, Colorado, for Defendants–Appellees.

Opinion by Judge RUSSEL.

Plaintiffs, Georgiy I. Svanidze and Mind Consortium, Inc., appeal from the trial court's summary judgment in favor of defendants, Jeffrey L. Kirkendall, Grand Victorian, LLC, and Citywide Banks. We affirm.

## I. Background

This case concerns the sale of a bed and breakfast that is located in Winter Park. The property was the sole corporate asset of Mind Consortium. Svanidze was the president, chairman, and sole shareholder of the corporation.

The articles of incorporation identified Whitney Warren as vice president. Because Svanidze lived in Russia, Warren and her husband operated the bed and breakfast, handled all of the day-to-day business decisions, and prepared and signed documents on behalf of the corporation.

In 2000, Warren and her husband hired a broker to auction the bed and breakfast. Kirkendall submitted the top bid and purchased the property for $686,500. Warren executed a warranty deed conveying title to Kirkendall. She signed the deed as "Vice President and Secretary" for the corporation, and her signature was both notarized and accompanied by the corporate seal.

Kirkendall financed the purchase with a loan from Citywide Banks. He later formed

Grand Victorian and transferred title to that company.

In 2003, plaintiffs filed a quiet title action against Kirkendall, Citywide Banks, and Grand Victorian. Plaintiffs claimed that the sale was void because Warren had sold the property without Svanidze's knowledge or consent.

Defendants filed a motion for summary judgment. Relying on undisputed evidence that Kirkendall was a bona fide purchaser, defendants argued that the sale was valid under the corporate conveyance statute, § 38–30–144, C.R.S.2006. The trial court agreed with defendants and granted summary judgment.

Plaintiffs then filed this appeal.

## II. Standard of Review

Summary judgment should be granted only if it is clear that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. C.R.C.P. 56; *Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 613 (Colo.1999). Factual disputes will not defeat an entry of summary judgment if the disputed facts are not material to the outcome of the case. *See Raygor v. Bd. of County Comm'rs*, 21 P.3d 432, 435 (Colo.App.2000). We review the trial court's ruling de novo. *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 298–99 (Colo.2003).

## III. Governing Law

Plaintiffs' appeal depends, in large part, on the meaning of the corporate conveyance statute. This statute governs the manner in which corporations may convey real property in Colorado. As relevant here, the statute provides:

(1) A private corporation, authorized by law to convey, mortgage, or lease any of its real estate, may convey, mortgage, or lease the same in the manner authorized by articles 30 to 44 of this title or by instrument under its common seal, subscribed by its president, vice-president, or other head officer.

(2) Any corporate instrument affecting title to real property, executed by the presi-

dent, vice-president, or other head officer of the corporation, in the form required or permitted by law, shall be deemed to have been executed with proper authority in the usual course of business, and shall be binding and conclusive upon the corporation as to any bona fide purchaser, encumbrancer, or other person relying on such instrument.

(3) There shall be filed or recorded in the office of the county clerk and recorder of each county where a corporation owns real property:

(a) A certificate of incorporation of a domestic corporation or a certified copy thereof; if the articles of incorporation limit the duration of the corporate life to less than perpetuity, or limit or impose conditions upon the exercise of the statutory powers of the corporation with respect to real property, then a certified copy of said articles;

(b) Where an amendment to the articles of incorporation changes the name or the period of duration of a domestic corporation, or limits or imposes conditions upon the exercise of the statutory powers of the corporation with respect to real property, the certificate of amendment or a certified copy thereof, and, if the certificate of amendment does not set forth such amendment, a certified copy of the articles of amendment;

. . . .

(4) The failure to file any of the documents set forth in subsection (3) of this section in the office of any county clerk and recorder in this state shall not affect or impair the validity of such document; but any corporation which is required by subsection (3) of this section to file or record documents in addition to the certificate of incorporation or the certificate of authority but which has not filed or recorded such documents at the time any person acquires any interest in or lien upon real property from said corporation shall, as against such person and those claiming under him, be conclusively deemed to be an existing corporation qual-

ified to exercise the powers described in section 7–103–102, C.R.S.

Section 38–30–144.

In resolving an issue of statutory interpretation, we look first to the plain language of the statute. *People v. Dist. Court,* 713 P.2d 918, 921 (Colo.1986). We construe the statute as a whole to give consistent, harmonious, and sensible effect to all its parts. *Davison v. Indus. Claim Appeals Office,* 84 P.3d 1023, 1029 (Colo.2004).

## IV. Discussion

Plaintiffs challenge the trial court's order on three grounds. We consider and reject their contentions as follows.

### A. Authorized by Law to Convey

■ Plaintiffs first challenge the trial court's conclusion that the corporation was "authorized by law" to convey real estate, within the meaning of § 38–30–144(1). They assert that a corporation is not authorized to convey its sole asset unless the shareholders have approved the transaction in a manner that complies with § 7–112–102, C.R.S.2006. And they assert that, in this case, there is a genuine issue whether proper shareholder approval was obtained. (Indeed, plaintiffs assert that Warren sold the property without notice to Svanidze, after her husband forged a shareholder resolution and other corporate documents.)

We reject this argument.

The corporate conveyance statute does not, by express language or by implication, require evidence of shareholder approval. It requires only that the corporation be "authorized by law" to convey real estate. A corporation possesses this general legal authority unless otherwise provided in the articles of incorporation. Section 7–103–102(1)(d)–(e), C.R.S.2006; *Bliss v. Harris,* 38 Colo. 72, 75, 87 P. 1076, 1076 (1906).

Accordingly, the conveyance statute requires that certain corporate documents—the articles of incorporation or amendments to the articles—be filed with the appropriate clerk and recorder if there is any limitation on the corporation's general power to convey real estate. *See* § 38–30–144(3). If those corporate documents are not properly filed, the conveyance statute abrogates any protection that the corporation would otherwise have against a party who "acquires any interest in or lien upon real property from said corporation." Section 38–30–144(4).

Here, it is undisputed that Mind Consortium filed no corporate documents that would have alerted third parties to any limitation on (1) its general legal authority to sell real estate or (2) Warren's authority to execute a deed on the corporation's behalf. Under these circumstances, plaintiffs cannot claim, as against a bona fide purchaser or encumbrancer, that Mind Consortium's general legal authority was undermined by the absence of proper shareholder approval. *See Kuehn v. Kuehn,* 642 P.2d 524, 526 (Colo.App.1981) (upholding the validity of the sale of corporation's real property to bona fide purchaser despite corporate officer's alleged lack of authority to sell the property); *R.W. Holdco, Inc. v. SCI/RW Holdco, Inc.,* 250 Ga.App. 414, 551 S.E.2d 825, 829 (2001) (same).

### B. Reliance

■ The corporate conveyance statute states that a properly executed instrument is "binding and conclusive upon the corporation as to any bona fide purchaser, encumbrancer, or other person relying on such instrument." Section 38–30–144(2). Plaintiffs assert that the subsection's final phrase—"relying on such instrument"—requires proof of actual reliance in all cases. And they assert that the trial court erroneously granted summary judgment in the absence of evidence that Kirkendall and Citywide Banks actually relied on the warranty deed.

We reject this argument.

The corporate conveyance statute does not require proof of actual reliance in all cases. Contrary to plaintiffs' view, the participial phrase "relying on such instrument" plainly modifies only the last item in the series "bona fide purchaser, encumbrancer, *or other person*" (emphasis added). The entire phrase reflects that the three items are alike—in that all rely on the instrument—and that bona fide purchasers and encumbrancers rely on the instrument *by*

*definition.* In effect, the legislature has recognized that (1) bona fide purchasers necessarily rely on the instrument to pass title, and (2) encumbrancers necessarily rely on the instrument to create a security interest.

Had the legislature intended to require proof of actual reliance in all cases, it would not have listed "bona fide purchaser" or "encumbrancer" as separate items. Instead, it would have stated that a properly executed instrument is binding and conclusive "as to *any* person relying on such instrument."

Because Kirkendall is a bona fide purchaser and Citywide Banks is a bona fide encumbrancer, the trial court properly granted summary judgment under § 38–30–144(2) without requiring evidence of actual reliance.

### C. Valid Deed

■ Plaintiffs assert that § 38–30–144(2) offers no protection to bona fide purchasers or encumbrancers if the pertinent corporate instrument has been forged. And they assert that, in this case, the warranty deed was forged because it was "obtained by fraud."

We accept the legal premise of plaintiffs' argument but reject the factual premise. The undisputed evidence shows that the deed was not forged or otherwise void.

■ It is well established that a forged deed is void and conveys no title. *Upson v. Goodland State Bank & Trust Co.,* 823 P.2d 704, 705 (Colo.1992). It is similarly clear that fraudulent acts generally render a deed voidable, but not void. *See Bray v. Trower,* 87 Colo. 240, 247, 286 P. 275, 278 (1930); *Sec. Servs., Ltd. v. Equity Mgmt., Inc.,* 851 P.2d 921, 924 (Colo.App.1993). If a deed is voidable for fraud, it will convey good title to a bona fide purchaser. *See Martinez v. Affordable Housing Network, Inc.,* 123 P.3d 1201, 1205 (Colo.2005); *Sec. Servs., Ltd. v. Equity Mgmt., Inc., supra,* 851 P.2d at 924.

■ If a person has been fraudulently deceived about the nature of a document, so that he or she is excusably ignorant about what has been signed, courts recognize "fraud in the factum." *See Meyers v. Johanningmeier,* 735 P.2d 206, 207 (Colo.App.1987) (explaining relationship between statutory

defense against holders in due course of negotiable instruments and the common law defense of fraud in the factum). Unlike other types of fraud, fraud in the factum yields an instrument that is void, and not merely voidable. *Akins v. Vermast,* 150 Or.App. 236, 945 P.2d 640, 643 n. 7, *adhered to on reconsideration,* 151 Or.App. 422, 950 P.2d 907 (1997); *Bennion Ins. Co. v. 1st OK Corp.,* 571 P.2d 1339, 1341–42 (Utah 1977).

Here, plaintiffs did not allege fraud in the factum. They did not dispute that Warren signed the deed, knowing that it would convey an interest in real property. Therefore, even if Warren and her husband defrauded the corporation as plaintiffs allege, the deed was merely voidable and conveyed good title:

- The deed was proper. It was in writing, signed by an officer on behalf of the corporation as grantor, and in the form required by statute. *See* § 38–10–106, C.R.S.2006 (statute of frauds); *see also* § 38–30–113, C.R.S.2006 (providing the requirements and form for a valid deed for the conveyance of real property); *Colorado Real Estate Title Standards* § 6.2.1 (2006) ("an instrument which is properly acknowledged is prima facie evidence of the authority of officers to act on behalf of a corporation").

- As previously noted, Mind Consortium did not record any document that would have notified third parties of any limitation on Warren's authority to convey title. *See Kuehn v. Kuehn, supra,* 642 P.2d at 526 (deeds executed on the principal's behalf were valid and binding where the principal had clothed the agent "with the indicia of a corporate officer").

- There is no evidence that Kirkendall or Citywide Banks had notice of any defect in the title.

Plaintiffs argue that they should not be made to suffer the loss because Kirkendall and Citywide Banks were better able to guard against the fraudulent conduct of Warren and her husband. We do not address this policy argument because we are required

to give effect to the legislative policy set forth in § 38–30–144.

The judgment is affirmed.

Judge CASEBOLT and Judge GRAHAM concur.