**Joe DELSAS, by his next friend, Dennis DELSAS, Plaintiff–Appellant,**

v.

**CENTEX HOME EQUITY COMPANY, LLC, and United States Small Business Administration, Defendants–Appellees.**

No. 06CA2571.

Colorado Court of Appeals, Div. II.

May 1, 2008.

Worrell, Durrett & Jaynes, PC, Stephen J. Worrell, Anthony J. Durrett, Robert C. Gavrell, Glenwood Springs, Colorado, for Plaintiff–Appellant.

Karsh, Fulton, Gabler & Joseph, PC, Seymour Joseph, Denver, Colorado, Defendant–Appellee Centex Home Equity Company, LLC.

Troy Andrew Eid, United States Attorney, Paul Farley, Assistant United States Attorney, Denver, Colorado, for Defendant–Appellee United States Small Business Administration.

Opinion by Judge BERNARD.

This appeal involves the trial court's dismissal of a claim to quiet title to property based upon allegations that a warranty deed

was procured by fraud and by exploiting the incapacity of the deed's grantor, Joe Delsas (Joe). The case was filed by Dennis Delsas (Dennis), Joe's son and next friend. Dennis appeals the trial court's judgment granting a motion to dismiss filed by two of four defendants, Centex Home Equity Company, LLC (Centex) and the United States Small Business Administration (the SBA). We reverse and remand.

## I. Background

On July 28, 1994, Joe, who was born in 1916, and his wife, Phyllis, executed their wills. The wills provided that, upon the death of the surviving spouse, the estate would be left to their children.

Phyllis died in June 1998. Joe's daughter and son in-law, Cheryl and John Ratkiewicz (Cheryl and John), moved Joe from Mesquite, Nevada, to a house he owned in Glenwood Springs, Colorado (the house).

On November 6, 1998, Joe revoked his 1994 will and executed a new one leaving the house to Cheryl and John. Joe then conveyed the house to Cheryl and John as joint tenants by warranty deed. Cheryl and John recorded the deed in the official records of Garfield County. The documentation indicated a $40,000 purchase price, which Dennis claims was never paid.

During February 2000 and February 2002, Joe transferred approximately $299,000 into bank accounts owned by Cheryl and John, who then borrowed nearly $450,000 from Centex and the SBA. These loans were secured by a deed of trust on the house.

Dennis, as Joe's next friend, filed this lawsuit in which he made a series of claims against Cheryl and John, including allegations that Joe lacked the mental capacity to understand the effect and consequences of conveying the house and the money to them; that they had exploited Joe's incapacity; and that they had engaged in fraud.

The complaint made a single claim against Centex and the SBA. It alleged the warranty deed was void because Joe lacked the mental capacity to execute it, and because it had been obtained by fraud. As a remedy, Dennis asked the court to conclude that Cheryl, John, Centex, and the SBA did not have any interest in the house and that title should be quieted in Joe.

The complaint did not allege, nor has any evidence been submitted, that Centex or the SBA had any knowledge, at the time the loan was approved and the deed of trust was placed on the house, of the allegations that Joe was mentally incompetent to execute the warranty deed, or the allegations that Cheryl and John engaged in fraud to obtain the warranty deed.

Centex and the SBA filed a motion under C.R.C.P. 12(b)(5) asking the trial court to dismiss the case against them because Dennis had failed to state a claim upon which relief could be granted. Dennis's response was accompanied by two affidavits relevant to this discussion.

The first affidavit was from a medical doctor who had taught neurology at the University of Colorado Health Sciences Center for twenty-four years. The doctor examined Joe, inspected Joe's medical records, and came to the conclusion that Joe had suffered from "severe, and long-standing, vascular dementia" for some time before the occurrence of any of the transactions between Joe and Cheryl and John that formed the basis for the lawsuit. The doctor stated that Joe's "disability was such that he could neither understand nor authorize the making of the Warranty Deed by which he conveyed his home to his daughter and her husband."

The second affidavit was executed by Raelean Ratkiewicz (Raelean), Cheryl and John's daughter. Her affidavit stated that her mother "would often take papers to [her] grandfather [Joe] and tell him to sign them. He would not ask what the documents were or examine them, but just sign them. On the occasion that he did ask, she would tell him it was for medical issues."

In a written order, the trial court granted the motion to dismiss filed by Centex and the SBA, concluding that the warranty deed was voidable, rather than void, because Joe had not been adjudged incompetent before he signed the warranty deed. The court also found that (1) Centex and the SBA were bona fide encumbrancers for value without

notice of the alleged defects in the creation of the warranty deed; and (2) Dennis had not pled a cognizable claim for forgery. The trial court did not address Dennis's claim that the warranty deed was absolutely void because of the doctrine of fraud in the factum.

The trial court did not dismiss the claims against Cheryl and John. Dennis appealed after obtaining a certification from the trial court under C.R.C.P. 54(b) declaring that the court's order dismissing the claim against Centex and the SBA was a final judgment, and therefore appealable.

## II. Introduction

There is an important difference between a void deed and one that is voidable. A void deed is a nullity, invalid ab initio, or from the beginning, for any purpose. It does not, and cannot, convey title, even if recorded. *Empire Ranch & Cattle Co. v. Coldren,* 51 Colo. 115, 121, 117 P. 1005, 1007 (1911). The interest of a good faith purchaser under a void deed is not protected. *See Upson v. Goodland State Bank & Trust Co.,* 823 P.2d 704, 706 (Colo.1992).

In contrast, a voidable deed conveys property and creates legal title unless, and until, it is set aside by the court. 23 Am. Jur.2d *Deeds* § 162 (Mar.2008); *see Logue v. Von Almen,* 379 Ill. 208, 224, 40 N.E.2d 73, 81–82 (1941); *Dent v. Calhoun,* 326 So.2d 320, 321–22 (Miss.1976).

The interest of a good faith purchaser who asserts ownership under a voidable deed will be protected. "[T]he distinction between void and voidable deeds becomes highly important in its consequences to third persons, 'because nothing can be founded upon a deed that is absolutely void, whereas from those which are only voidable, fair titles may flow.'" *Medlin v. Buford,* 115 N.C. 260, 20 S.E. 463, 463 (1894)(quoting *Somes v. Brewer,* 19 Mass. (2 Pick.) 184, 203 (1824)).

Courts have developed rules to determine what sorts of defects render a deed void or voidable, and which defects have no effect. For example, a forged deed is void. *Upson,* 823 P.2d at 705–06.

Generally, deeds obtained by fraud are voidable. *Svanidze v. Kirkendall,* 169 P.3d 262, 266 (Colo.App.2007). Thus, the interest of a good faith purchaser in a deed voidable because of fraud will be protected.

> A deed obtained as a result of fraud committed against the grantor or by use of undue influence by the grantee may be rescinded by the grantor. If a grantor is aware that the instrument he is executing is a deed and that it will convey his title, but is induced to sign and deliver by fraudulent misrepresentations or undue influence, the deed is voidable and can be relied upon and enforced by a bona fide purchaser.

*Fallon v. Triangle Management Services, Inc.,* 169 Cal.App.3d 1103, 1106, 215 Cal. Rptr. 748, 749–50 (1985) (citation omitted).

However, a deed procured by a particular kind of fraud, called fraud in the factum, is void.

> If a person has been fraudulently deceived about the nature of a document, so that he or she is excusably ignorant about what has been signed, courts recognize "fraud in the factum." Unlike other types of fraud, fraud in the factum yields an instrument that is void, and not merely voidable.

*Svanidze,* 169 P.3d at 266 (citation omitted); *see also Upson,* 823 P.2d at 706; Dan B. Dobbs, *Handbook on the Law of Remedies* § 9.6, at 645–46 (2d ed.1993).

The effect of mental incapacity, often described as "insanity" in early cases, of a person executing a deed has long been the subject of debate among courts. *See generally* Susanna L. Blumenthal, *The Default Legal Person,* 54 U.C.L.A. L.Rev. 1135, 1219–1244 (June 2007). This debate produced a majority and a minority rule. The minority rule is that the transactions of mentally incapacitated persons are void, while the majority rule is that such transactions are voidable. *See generally* Richard A. Lord, *Williston on Contracts* §§ 10:2 (minority rule) & 10:3 (majority rule) (4th ed.1993).

To resolve this case, we must address (1) the concept of fraud in the factum, and (2) whether Colorado follows the minority or the majority rule concerning the effect of a per-

son's alleged mental incapacity upon a deed that he or she executes. However, we first analyze the procedural posture in which these issues are to be considered.

### III. C.R.C.P. 12(b)(5) and 56

■ When, as here, a court looks to information outside the complaint in considering a motion to dismiss under C.R.C.P. 12(b)(5), the motion must be treated as a request for summary judgment, and resolved under C.R.C.P. 56. C.R.C.P. 12(b)(5); *Public Service Co. v. Van Wyk*, 27 P.3d 377, 386 (Colo.2001). Summary judgment may be entered only when there is no genuine issue of material fact. A material fact is one that affects the case's outcome. *McGee v. Hardina*, 140 P.3d 165, 166 (Colo.App.2005). We review trial court orders granting motions for summary judgment de novo. *Id.*

Here, the trial court considered affidavits submitted by both parties in support of their respective positions on the motion to dismiss. Thus, the trial court treated the motion to dismiss as a motion for summary judgment, and we review the trial court's orders accordingly.

### IV. Absence of Formal Guardianship

■ Centex and the SBA argue that Dennis cannot bring this action because he was not duly appointed Joe's guardian under sections 15–14–301 to –318, C.R.S.2007, concerning guardianship of an incapacitated person. We disagree.

Here, although Dennis has not been appointed Joe's guardian, he is allowed to proceed as his next friend. *See* C.R.C.P. 17(c) ("If an infant or incompetent person does not have a duly appointed representative, or such representative fails to act, he may sue by his next friend or by a guardian ad litem."); *Black's Law Dictionary* 1070 (8th ed.2004) (a "next friend" is "[a] person who appears in a lawsuit to act for the benefit of an incompetent or minor plaintiff, but who is not a party to the lawsuit and is not appointed as a guardian").

### V. Fraud in the Factum

■ Dennis argues that the trial court improperly granted summary judgment because there was a material issue of fact whether the warranty deed was void because of the doctrine of fraud in the factum. We agree.

Here, Dennis alleged fraud in the factum, relying on the affidavits from Raelean and the doctor. Raelean's affidavit stated that Joe almost never asked what the documents he was signing were, but, when he asked, Cheryl would tell him that they concerned "medical issues." The doctor's affidavit indicated that Joe did not have the capacity to understand or authorize the warranty deed.

Although Raelean's affidavit is not specific as to the warranty deed, we conclude these factual allegations are sufficient to indicate, for purposes of summary judgment, that there is a material issue of fact whether Cheryl and John took advantage of Joe's alleged incapacity and misled him about the nature of the warranty deed to the point that he was ignorant about what he had signed. *See Elder v. Schumacher*, 18 Colo. 433, 440, 33 P. 175, 178 (1893) (a deed purportedly signed by a property owner was void because, when it was executed, a stroke had rendered the property owner "physically and mentally incapable of executing a conveyance," which led to the further determination that the property owner had not signed the deed, and that her signature on the deed was forged).

Even though there is no indication that Centex and the SBA participated in this alleged fraud in the factum or were aware of Joe's alleged mental incapacity, the existence of this material issue of fact means the issue whether the deed is void, as opposed to being voidable, remains unresolved. If the deed is determined to be void because of fraud in the factum, Centex and the SBA did not acquire a valid interest in the house, even though they acted in good faith, and their interests will be eliminated. Thus, the trial court's decision to grant the motion to dismiss was error and must be reversed.

## VI.  Mental Incapacity

Because it is likely to arise on remand, we address the issue whether, if proved, Joe's alleged mental incapacity alone would render the warranty deed void, and, as a result, Centex and the SBA did not acquire an interest in the house.  We conclude the trial court properly resolved this issue.

Relying on *Elder*, Dennis contends that Colorado follows the minority rule, thus rendering deeds executed by mentally incapacitated persons void.  Dennis reasons that he need only establish a material issue of fact whether Joe was mentally incapacitated when he executed the warranty deed to defeat a motion for summary judgment.  Under this analysis, Centex and the SBA would have no interest in the house, even if there is no proof of fraud in the factum.  We disagree for several reasons.

First, we conclude that *Elder* is distinguishable on its facts and in its holding, and therefore does not control here.  Although language in *Elder* suggests the conclusion Dennis asserts, 18 Colo. at 441–42, 33 P. at 178, it is only part of the holding, not its entirety.  *Elder* stands for the compound proposition that a deed is absolutely void if the seller is mentally incapable of making a conveyance, physically incapable of signing the deed, the signature on the deed is forged, and the person seeking to obtain the property by the deed is aware of one or more of the alleged defects.

Second, decisions from our supreme court after *Elder* indicate that Colorado follows the majority rule, which holds that contracts executed by mentally incapacitated people are voidable.  *Davis v. Colorado Kenworth Corp.*, 156 Colo. 98, 104–05, 396 P.2d 958, 962 (1964); *Green v. Hulse*, 57 Colo. 238, 243, 142 P. 416, 418 (1914) ("The great weight of authority is that deeds of persons in fact insane, but not so adjudged, are generally held to be voidable, and not absolutely void.").  At least two commentators have cited *Davis* or *Green* for the proposition that Colorado follows the majority rule.  Ann C. Kiley, *Setting Aside the Grantor's Deed on Grounds of Incapacity and Undue Influence*, 36 Colo. Law. 57, 57 (May 2007) (citing *Green*) ("Colorado courts long have held that deeds of insane persons generally are voidable and not absolutely void."); *Williston on Contracts* § 10:3, at 234–35 n. 1 (citing *Davis* ).

The parties have not pointed us to a Colorado case that states *Elder* is representative of the minority rule, nor has our research disclosed one.  Therefore, we reject Dennis's reliance on commentaries that have construed *Elder* as an example of the minority rule.  2 Joyce Palomar, *Patton and Palomar on Land Titles* § 336, at 129 (3d ed.2003); Herbert Thorndyke Tiffany, *The Law of Real Property* § 1370, at 208 (3d ed.1939); Annotation, *Validity and Enforceability of Contract Made in Good Faith with Incompetent Before Adjudication of Incompetency*, 46 A.L.R. 416 (1927).

Third, *Davis* and *Green* do not mention *Elder*, and thus they do not expressly overrule it.  However, *Davis* and *Green* were decided later in time, and hence, to the extent they conflict with *Elder*, they control because they were more recently decided.  *Parker v. Plympton*, 85 Colo. 87, 97, 273 P. 1030, 1034 (1928).

A conclusion that the warranty deed is merely voidable has important ramifications for Centex and the SBA. The law takes pains to protect bona fide purchasers who, without knowledge of any defect, obtain their interest in a contract or a deed from a person with a voidable title.  *See* § 4–2–403(1), C.R.S.2007 ("A person with voidable title [in goods] has power to transfer a good title to a good faith purchaser for value."); § 4–3–202(b), C.R.S. 2007 (the remedy of rescission of a negotiable instrument "may not be asserted against a subsequent holder in due course or a person paying the instrument in good faith and without knowledge of facts that are a basis for rescission"); *West v. Roberts*, 143 P.3d 1037, 1042 (Colo.2006) (§ 4–2–403 protects good faith purchasers for value); *Martinez v. Affordable Housing Network, Inc.*, 123 P.3d 1201, 1205 (Colo.2005) (a deed voidable for fraud protects a subsequent purchaser if he or she took the property for value and without notice of the defect in title); *Svanidze*, 169 P.3d at 266; *Strekal v. Espe*, 114 P.3d 67, 71 (Colo.App.2004) (§ 38–35–109(1), C.R.S.

2007, Colorado's real estate recording act, protects "a good faith purchaser with a record interest in real property over someone who has an unrecorded interest in the same property"); *Williston on Contracts* § 10:6, at 269 ("To the extent that the mental illness renders the maker's or drawer's obligation merely voidable . . . and not void, a holder in due course who had not dealt with the incompetent would take free of the defense [of mental incapacity].").

Here, unless Dennis proves fraud in the factum, which would render the deed void, Joe's alleged mental incapacity at the time of the execution of the warranty deed, by itself, would render the warranty deed merely voidable.

There was no constructive notice of Joe's alleged mental incapacity, because such status had not been declared at a formal legal proceeding. *See* § 15–14–311(1)(a)(I), C.R.S. 2007 (judicial determination of incapacitated person for purposes of appointment of guardian); §§ 16–8–101 to –122, C.R.S.2007 (procedures for determining insanity and incompetency in criminal cases); §§ 27–10–101 to –129, C.R.S.2007 (care and treatment of persons with mental illness). Further, there is no indication that Centex and the SBA had actual notice of Joe's alleged mental incapacity. Thus, unless fraud in the factum is proved, Centex and the SBA, as good faith purchasers, have a valid interest in the house, even if it is established that Joe was mentally incapacitated when he executed the warranty deed. *See Svanidze*, 169 P.3d at 266.

Thus, if Dennis demonstrates that Joe lacked the mental capacity to execute the deed, the transfer of the house to Cheryl and John will be voided. Ownership of the house will be returned to Joe, subject to the interests of Centex and the SBA. If Dennis does not establish that Joe lacked the mental capacity to execute the deed, Cheryl and John will retain ownership of the house, subject to the interests of Centex and the SBA.

## VII. Conclusion

The trial court's judgment dismissing the claim against Centex and the SBA based on Dennis's allegation that Cheryl and John committed fraud in the factum is reversed, and the case is remanded for further proceedings consistent with this opinion.

Judge ROTHENBERG and Judge CARPARELLI concur.