The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
March 19, 2020

## 2020COA43

**No. 18CA2281, *Namaste Judgment Enforcement, LLC v. King* —**

**Civil Procedure — Process — Substituted Service**

A division of the court of appeals interprets C.R.C.P. 4(f) —

"Substituted Service" — and holds that first-class mailing of the

summons and complaint to a substituted person does not

constitute sufficient "delivery" under Rule 4(f)(1) to effect valid

service under Rule 4(f)(2) or to confer personal jurisdiction to the

court.  Accordingly, the district court's order denying the motion to

vacate the default judgment is reversed, the judgment is vacated,

and the case is remanded for further proceedings.

COLORADO COURT OF APPEALS                                    **2020COA43**

Court of Appeals No. 18CA2281
Jefferson County District Court No. 10CV1510
Honorable Christopher C. Zenisek, Judge

Namaste Judgment Enforcement, LLC, as Assignee of Todd Oltmans and
Colleen McClary,

Appellee,

v.

Michael Keith King; Crown Investment Group, LLC, a Colorado limited liability
company; and Crown Development Group, LLC, a Colorado limited liability
company,

Defendants-Appellants.

ORDER VACATED AND CASE
REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE FREYRE
Richman and Grove, JJ., concur

Announced March 19, 2020

Van Remortel LLC, Fred Van Remortel, Denver, Colorado, for Plaintiff-Appellee

Michael Best & Friedrich LLP, Patrick J. Bernal, Broomfield, Colorado, for
Defendants-Appellants

¶ 1    Defendants, Michael Keith King (Mr. King); Crown Investment Group, LLC, (Crown Investment); and Crown Development Group (Crown Development) — collectively, defendants — appeal the district court's order denying defendants' motion to set aside a default judgment.  Mr. King was allegedly the sole owner of both entities.  The district court entered a default judgment against defendants in 2010 when they failed to respond to a complaint filed by plaintiffs, Todd Oltmans and Colleen McClary (investors).  Because Mr. King had left the country, investors were unable to personally serve the defendants under C.R.C.P. 4(e), so investors moved for substituted service under C.R.C.P. 4(f).  The court granted investors' motion.

¶ 2    Mr. King returned to the United States in 2017 and learned of the default judgment when Namaste Judgment Enforcement, LLC (Namaste) — a collection agency to which investors had assigned their judgment — served a writ of garnishment on his bank in 2018.  Once Mr. King discovered the default judgment, defendants moved to set aside the default judgment under C.R.C.P. 60(b)(3) as void for lack of proper service.  After a hearing, the district court denied defendants' motion.

1

¶ 3    In this appeal, we must interpret C.R.C.P. 4(f) — "Substituted Service" — to determine whether first-class mail of the summons and complaint to Mr. King's mother and brother-in-law constituted sufficient "delivery of process" under Rule 4(f)(1) to effect valid service under Rule 4(f)(2). We conclude that it did not. Accordingly, we reverse the district court's order denying the motion, vacate the default judgment, and remand for further proceedings to allow defendants to respond to the complaint.

## I.    Factual and Procedural Background

¶ 4    We draw the following factual history from investors' complaint, subsequent motions filed by investors, and the transcript of the hearing on defendants' motion to vacate the default judgment.

¶ 5    In 2007, Mr. King approached investors offering a "very secure" investment opportunity with Crown Investment. On July 16, 2007, Mr. King, in his capacity as "Managing Member" of Crown Investment, executed a promissory note whereby Crown Investment promised to repay investors their $35,000 investment in the company plus ten percent interest by August 17, 2007.

Unbeknownst to investors, Mr. King transferred investors' $35,000 to Crown Development and not Crown Investment.

¶ 6    Just before the note was due, Mr. King asked investors to extend the payment deadline in exchange for additional interest. Investors refused.  Mr. King then promised to pay them within a matter of days but failed to do so, citing numerous reasons.  About eight months after payment was due, investors received a check from Mr. King drawn on a Crown Investment bank account in the amount of $68,075.  The check was returned for insufficient funds.

¶ 7    On March 30, 2010, investors filed a complaint in district court seeking to recover the promised funds.  Although Crown Investment was the only signatory on the note, investors also brought claims against Crown Development and Mr. King under piercing the corporate veil and alter ego theories.  Near the end of April 2010, Mr. King moved from Parker, Colorado, to Costa Rica, and remained out of the country for approximately seven years

before returning to the United States and settling in Ashland, Oregon, in October 2017.[1]

¶ 8    After filing the complaint, investors unsuccessfully attempted to serve defendants. They began by attempting service at the addresses on file at the Colorado Secretary of State's office for Crown Investment and Crown Development, and at Mr. King's personal residence in Parker, Colorado. The process server found the businesses' addresses vacant and the personal residence surrounded by a fence and gated driveway that prevented access to the home.

¶ 9    Investors retained a second process server, who conducted surveillance of Mr. King's residence. According to the second process server, he spoke with Mr. King's tenant who lived at that address. The tenant claimed that many other process servers were trying to serve Mr. King and that Mr. King was on an extended

---

[1] In the district court, Mr. King testified that he and his family traveled internationally for several years before returning to the United States. They lived in Costa Rica for a year and a half and then moved to Belize for seven months. After Belize, they moved to Bali, Indonesia, and remained there for four years before moving to British Columbia, Canada, for a year. The Kings returned to the United States in October 2017.

vacation. Concluding that Mr. King was avoiding service of process, the process server then performed skip traces that showed that Mr. King had continued using the personal address in Parker to secure credit.

¶ 10    On July 22, 2010, investors filed a "Motion for Substituted Service on All Defendants" pursuant to C.R.C.P. 4(f). They requested authorization to send the summonses and complaint "as substituted service under Rule 4(f) by U.S. Mail" to: (1) Mr. King's personal address in Parker; (2) Mr. King's mother in Illinois; (3) Mr. King's second known address; (4) Mr. King's last known work address; (5) to Mr. King's brother-in-law in Colorado. Presumably, investors sought to substitute Mr. King's mother and brother-in-law for Mr. King and the other two defendants; however, the motion did not explain why service on those substituted persons was reasonably calculated to give actual notice to Mr. King. The court granted the motion on July 28, 2010, and according to investors' counsel, the only mail that was returned as undeliverable was the one sent to Mr. King's personal address in Parker. Counsel provided no tracking or mail delivery confirmation documenting the receipt of the other mailings.

¶ 11 Neither Mr. King nor his businesses filed an answer or other responsive pleading by the August 20, 2010 deadline. Consequently, on September 1, 2010, investors filed a "Motion for Default Judgment Against All Defendants." On September 14, 2010, the district court granted the motion and entered judgment in the amount of $113,384.27, plus interest at the statutory rate of 8% "until this judgment is paid in full, along with costs of collection to include attorney fees." The note did not contain any fee-shifting language. In April 2017, investors assigned the judgment to Namaste.

¶ 12 In 2018, Namaste located Mr. King. Namaste obtained a "Writ of Garnishment with Notice of Exemption and Pending Levy" in the amount of $200,133.01 to seize funds from Mr. King's Chase bank account. It served the writ on Mr. King in May 2018.

¶ 13 On August 31, 2018, defendants moved to set aside the default judgment under C.R.C.P. 60(b)(3) and asserted that the judgment was void. Citing a violation of the right to due process, defendants claimed that investors had not exercised due diligence in determining that Mr. King could not be personally served and had failed to personally serve him. After a hearing, the district

6

court found that investors had exercised due diligence in attempting personal service of process, and that they had "sent the documents to five different addresses including [those of] two close family members." The court denied defendants' motion.

## II.    Motion to Set Aside Default Judgment

¶ 14    Defendants contend that the court erred by finding sufficient service of process and by denying their motion to set aside the judgment. They argue that service was invalid because investors' counsel failed to personally serve the substituted persons in accordance with Rule 4(f)(1). We agree and hold that first-class mailing to a substituted person is insufficient delivery of process to satisfy due process and effect valid service.

### A.    Standard of Review and Relevant Law

¶ 15    We review de novo a district court's decision to grant relief from a judgment under C.R.C.P. 60(b)(3) on the basis that it is void, specifically when, as here, a party alleges lack of personal jurisdiction due to improper service of process. *Goodman Assocs., LLC v. WP Mountain Props., LLC*, 222 P.3d 310, 314 (Colo. 2010).

¶ 16    We apply statutory construction principles when interpreting procedural rules, beginning with the commonly understood and

accepted meanings of their words, otherwise known as their plain language. *Curry v. Zag Built LLC*, 2018 COA 66, ¶ 23. If the rule is "clear and unambiguous on its face, then we need not look beyond the plain language." *Vigil v. Franklin*, 103 P.3d 322, 327 (Colo. 2004). We will also endeavor to "give effect to every word and render none superfluous." *Lombard v. Colo. Outdoor Educ. Ctr., Inc.*, 187 P.3d 565, 571 (Colo. 2008).

¶ 17     C.R.C.P. 55(c) permits a court, for good cause shown, to "set aside an entry of default and, if a judgment by default has been entered, [the court] may likewise set it aside in accordance with Rule 60(b)." As relevant here, Rule 60(b) provides that "the court may relieve a party. . . from a final judgment, order, or proceeding for the following reasons . . . (3) the judgment is void." C.R.C.P. 60(b)(3). A default judgment is void if it "entered when the trial court lack[ed] personal jurisdiction over a defendant because of invalid service of process." *Rainsberger v. Klein*, 5 P.3d 351, 353 (Colo. App. 1999) (citing *Weaver Constr. Co. v. Dist. Court*, 190 Colo. 227, 545 P.2d 1042 (1976)). "Where a judgment is set aside on jurisdictional grounds, it is *vacated* and of no force and effect." *Weaver*, 190 Colo. at 232, 545 P.2d at 1045.

¶ 18    It is well settled that a judgment entered against a defendant without valid service of process violates due process of law and is void. *Id.* When a party has attempted, but is unable to, accomplish personal service under Rule 4(e), such party may move for substituted service under Rule 4(f). *Willhite v. Rodriguez-Cera,* 2012 CO 29, ¶¶ 20-22. Rule 4(f) provides as follows:

> In the event that a party attempting service of process by personal service under section (e) is unable to accomplish service, and service by publication or mail is not otherwise permitted under section (g), the party may file a motion, supported by an affidavit of the person attempting service, for an order for substituted service. The motion shall state (1) the efforts made to obtain personal service and the reason that personal service could not be obtained, (2) the identity of the person to whom the party wishes to deliver the process, and (3) the address, or last known address of the workplace and residence, if known, of the party upon whom service is to be effected. If the court is satisfied that due diligence has been used to attempt personal service under section (e), that further attempts to obtain service under section (e) would be to no avail, *and that the person to whom delivery of the process is appropriate under the circumstances and reasonably calculated to give actual notice to the party upon whom service is to be effective,* it shall:
>
> (1) *authorize delivery to be made to the person deemed appropriate for service,* and

> (2) order the process to be mailed to the address(es) of the party to be served by substituted service, as set forth in the motion, on or before the date of delivery. *Service shall be complete on the date of delivery to the person deemed appropriate for service.*

(Emphasis added.)

### B.    Analysis

¶ 19    In their motion for substituted service, investors explained their process servers' efforts to personally serve Mr. King. In paragraph 10, they proposed "to send the summonses and complaints for the three Defendants as substituted service under Rule 4(f) by U.S. Mail as follows . . . ." As pertinent here, they listed Mr. King's mother and her Illinois mailing address, as well as Mr. King's brother-in-law and his Colorado address. By granting the motion, we presume the court authorized delivery of process to each of these individuals as an appropriate substituted person under Rule 4(f).

¶ 20    At the hearing on the motion to vacate the default judgment, investors' counsel stated that the only mail returned as undeliverable was the one sent to the Parker residence. Nevertheless, counsel admitted that none of the documents was

10

sent by certified mail or another tracking method that could confirm receipt by the substituted person. Indeed, Mr. King's mother provided an affidavit stating that she did not recall ever receiving these documents. Moreover, Mr. King provided an affidavit stating that he had no knowledge of whether his brother-in-law had received service because he and his brother-in-law had not been on speaking terms since the summer of 2010.

¶ 21 The plain language of Rule 4 recognizes that it may "be difficult, if not impossible, to obtain personal service on a defendant" under Rule 4(e) and thus prescribes an alternate method to effectuate service under Rule 4(f). *Minshall v. Johnston*, 2018 COA 44, ¶ 14. However, our supreme court has made clear that "the completion and validity of service" under the rule "is linked to the delivery of process to the substituted person and not to the mailing of process to the defendant." *Willhite*, ¶ 24.

¶ 22 Relying on *Minshall,* Mr. King contends that "delivery" on the substituted person under Rule 4(f)(1) requires hand delivery and cannot be accomplished by first-class mailing. *See Minshall*, ¶ 7 ("Rule 4(f) does not allow for service on a party by mail. Rather Plaintiffs' motion must identify a separate, appropriate person on

whom process will be *hand delivered*." (Emphasis added.)) Because we must read the rule as a whole and must construe all of its provisions consistently, we agree and hold that first-class mailing to the substituted person under Rule 4(f)(1) does not effect valid service of process under Rule 4(f)(2). *See People v. Dist. Court,* 713 P.2d 918, 921 (Colo. 1986) (recalling that courts interpret statutes "so as to give consistent, harmonious, and sensible effect to all its parts"); *Int'l Satellite Commc'ns, Inc. v. Kelly Servs., Inc.,* 749 P.2d 468, 470 (Colo. App. 1987) (noting "[r]ules of civil procedure are to be construed as a whole, and a reviewing court must adopt a construction consistent with the purpose of the rules"); *see also Curry,* ¶ 23 (applying statutory construction principles to procedural rules).

¶ 23     First, Rule 4(e) describes how personal service is accomplished, and no one disputes that personal service requires "delivering a copy . . . to the person" or to that person's agent (hand delivery). *See* Rule 4(e)(1).

¶ 24     Next, the Rule recognizes that personal service cannot always be accomplished. Accordingly Rule 4(f) provides for service on a substituted person. But it does so by authorizing "delivery to be

made to the person deemed appropriate for service." Rule 4(f)(1). Reading the rule as a whole, the only distinction between Rule 4(e) and 4(f) is the identity of the person served, not the method of service. Indeed, if the supreme court had believed first-class mailing to a substituted person was sufficient, it would have said so as it did with respect to service on the defendant under Rule 4(f)(2). *See City of Colorado Springs v. Securcare Self Storage, Inc.*, 10 P.3d 1244, 1249 (Colo. 2000) (noting "the principle that courts presume that the legislative body meant what it clearly said").

¶ 25    We find further support for our interpretation in Rule 4(g), which is the only provision that authorizes service by mail. It states "Except as otherwise provided by law, service by mail or publication shall be allowed only in actions affecting specific property or status or other proceedings in rem."

¶ 26    And when a court finds service by mail appropriate, it "shall order the party to send by registered or certified mail a copy of the process addressed to such person at such addresses, requesting a return receipt signed by the addressee only." Rule 4(g)(1). Because "shall" is mandatory language, first-class mailing is never permitted under Rule 4 — only registered or certified mail is permitted,

13

neither of which occurred here. *See DiMarco v. Dep't of Revenue, Motor Vehicle Div.*, 857 P.2d 1349, 1352 (Colo. App. 1993) ("[u]nless the context indicates otherwise, the word 'shall' generally indicates that the General Assembly intended the provision to be mandatory") (citations omitted).

¶ 27 Therefore, and consistent with *Minshall*, we hold that first-class mailing to a substituted person under Rule 4(f)(1) does not effect valid service of process under Rule 4(f)(2) and that hand delivery to the substituted person is required. Accordingly, the default judgment is void as a matter of law. *See Weaver*, 190 Colo. at 232, 545 P.2d at 1045.[2]

¶ 28 Because we conclude that the judgment is void, we need not address Namaste's argument that defendants cannot obtain relief from the judgment under Rule 60(b) unless they show that they have a meritorious defense. *Id.* ("[W]here a judgment is set aside on grounds other than those challenging the jurisdiction of the court, the judgment is *opened* and the moving party, after a showing of

---

[2] We do not consider whether service on a corporate entity may be effected through substituted service on a relative of the entity's sole owner because neither party raises that issue on appeal.

good cause and a meritorious defense, will be permitted to file an answer to the original complaint and participate in a trial on the merits. Where a judgment is set aside on jurisdictional grounds, it is *vacated* and of no force and effect."); *Mason-Jares, Ltd. v. Peterson*, 939 P.2d 522, 524 (Colo. App. 1997) (once a party establishes that a judgment is void, it is unnecessary to establish a meritorious defense); *see also Shannon v. Norman Block, Inc.*, 256 A.2d 214, 219 (R.I. 1969) (it is "well settled that there is no necessity to make any showing of a meritorious defense where a litigant moves to vacate a void judgment"). Nor must we address the defendants' remaining contentions regarding due diligence and due process.

III.   Conclusion

¶ 29   The order is reversed, the default judgment is vacated, and the case is remanded for further proceedings to allow Mr. King and the other defendants to respond to the complaint.

JUDGE RICHMAN and JUDGE GROVE concur.