25CA1001 Harp v Abdulhakeem 06-11-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA1001
Arapahoe County District Court No. 22CV31730
Honorable Benjamin Figa, Judge
Honorable Ben L. Leutwyler III, Judge

Harp, L L C, a/k/a Harp, LLC, a Colorado Limited Liability Corporation,

Plaintiff-Appellee,

and

Welcome to Realty, LLC 401K PSP,

Defendant-Appellee,

v.

Noori Abdulhakeem,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE GOMEZ
Grove and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 11, 2026

---

Albert V. Evans, Centennial, Colorado, for Plaintiff-Appellee

Hatch Ray Olsen Conant LLC, Christopher J. Conant, Denver, Colorado, for Defendant-Appellee

Anderson Notarianni McMahon LLC, Kimberly A. Bruetsch, Denver, Colorado, for Defendant-Appellant

¶ 1    This case concerns a parcel of real property in Aurora, owned by plaintiff, Harp, L L C (Harp), that was judicially foreclosed upon and sold to defendant Welcome to Realty LLC 401K PSP (Welcome to Realty) and later sold to defendant Noori Abdulhakeem.  The trial court concluded that it never had personal jurisdiction over Harp because a different entity with a similar name had been served with process instead.  The court then unwound the foreclosure and declared Welcome to Realty and Abdulhakeem's interests in the property void.  In the aftermath of the voided foreclosure, Abdulhakeem asserted a breach of the warranty of title claim against Welcome to Realty and asserted claims for unjust enrichment against both Harp and Welcome to Realty.  The court rejected those claims.

¶ 2    In this appeal, Abdulhakeem challenges the order voiding the foreclosure judgment and sale, the determination that his and Welcome to Realty's interests were void, and the rejection of his breach of warranty and unjust enrichment claims.  We reject his challenges and affirm the judgment.  Additionally, Harp and Welcome to Realty both request an award of attorney fees for this appeal.  We deny both requests.

## I.    Background

¶ 3    Saddle Rock Metropolitan District (Saddle Rock) filed a judicial foreclosure action relating to the subject property in 2022, seeking to enforce a lien for unpaid assessments, attorney fees, and costs.[1] However, instead of serving Harp — an entity based in Aurora and the owner of the property — Saddle Rock served HARP, LLC — an unrelated entity based in Colorado Springs.  After the time for filing a responsive pleading had passed, the court entered a decree of judicial foreclosure and authorized a sheriff's sale of the property.

¶ 4    Welcome to Realty bought the property at auction for about $9,600 and received a deed from the Arapahoe County Sheriff's Office.  A few months later, Welcome to Realty entered into a contract to sell the property to Abdulhakeem.  Pursuant to the terms of that contract, Abdulhakeem paid Welcome to Realty $105,000, Welcome to Realty procured and paid for a $105,000 title insurance policy in favor of Abdulhakeem, and Welcome to Realty executed a special warranty deed for the property.

---

[1] Saddle Rock was a party in the underlying case but is not a party to this appeal.

¶ 5     Harp later learned of the foreclosure. It filed a motion to set aside the judgment and sheriff's sale under C.R.C.P. 60(b), asserting that it was the true owner of the property and that it had not been properly served. It also brought a separate case against Welcome to Realty and Abdulhakeem to quiet title in the property. Abdulhakeem brought a counterclaim against Harp for unjust enrichment and brought cross-claims against Welcome to Realty for breach of the warranty of title and unjust enrichment.

¶ 6     The trial court granted Harp's Rule 60(b) motion and voided the judgment and sale. It then consolidated the two cases. The court later granted summary judgment in favor of Harp on its quiet title claim, declaring Welcome to Realty and Abdulhakeem's interests void, and then granted summary judgment in favor of Welcome to Realty on Abdulhakeem's breach of warranty claim. After a bench trial, the court rejected Abdulhakeem's two unjust enrichment claims. This appeal followed.

II.     Challenge to Order Voiding Foreclosure

¶ 7     Abdulhakeem first challenges the trial court's Rule 60(b) order voiding the judgment authorizing foreclosure and the sheriff's sale. He points out that the entity that sought to unwind the

3

foreclosure — Harp, L L C (with spaces) — was delineated differently than the entity named as the grantee on the original deed — Harp LLC (without spaces).[2]  He also argues that under the secretary of state's naming conventions, the entity named as the grantee on the deed — Harp LLC (with lowercase letters) — is indistinguishable from the entity that was served in the foreclosure case — HARP, LLC (with capital letters).  Thus, he contends, Harp lacked standing to challenge the foreclosure judgment, and the service of process on HARP, LLC was proper.

¶ 8    We decline to consider these arguments, as Abdulhakeem didn't preserve them in the trial court.  *See Wisehart v. Zions Bancorporation*, 49 P.3d 1200, 1204 (Colo. App. 2002) (We "will not consider arguments not presented to the trial court" in a civil case.).  Abdulhakeem points out that Saddle Rock made similar arguments to the trial court, but he wasn't a party to the foreclosure case at the time Saddle Rock initially raised the arguments and the trial court ruled on them.  And while the quiet title case to which he was

---

[2] There is also a difference in the use of commas, but Abdulhakeem doesn't argue that it has any legal significance.

4

a party was later consolidated with the foreclosure case, that didn't make him a party to the foreclosure case. *See Nat'l Farmers Union Prop. & Cas. Co. v. Frackelton*, 650 P.2d 571, 572 (Colo. App. 1981) (Consolidation of two lawsuits "do[es] not merge [them] into a single cause 'or make those who are parties in one suit parties in another.'" (citations omitted)), *aff'd*, 662 P.2d 1056 (Colo. 1983). Moreover, he never made any attempt to raise the arguments himself; instead, all his arguments to the trial court accepted the voided foreclosure as an undisputed fact and addressed only its impact on the parties. Thus, we do not consider the arguments preserved by Abdulhakeem. *See United States v. Zapata*, 546 F.3d 1179, 1189-90 (10th Cir. 2008) (even where parties were aligned as codefendants, the objection of one defendant didn't preserve the appellate rights of other defendants).

¶ 9      Nor do we view either of Abdulhakeem's arguments as raising a matter of standing, which, as he notes, a party may raise at any time. *See HealthONE v. Rodriguez*, 50 P.3d 879, 891 n.5 (Colo. 2002). The crux of his so-called "standing" argument, which relates to Harp's ability to enforce the deed, doesn't rest on whether Harp suffered an injury in fact to a legally protected interest; plainly, it

did. *See Sandstrom v. Solen*, 2016 COA 29, ¶ 17 (setting forth the requirements of standing). There wasn't any dispute that Harp held title to the property, and to the extent that it may not have been properly identified in the deed, Abdulhakeem acknowledges that it had remedies available to it to correct the issue. As the owner of the property, Harp had standing to challenge the foreclosure of its property interest. *See id.* at ¶ 18.

¶ 10 Abdulhakeem's argument doesn't challenge any of that. Instead, it rests on the legal differences between Harp, L L C (as identified in the pleadings in this case), and Harp LLC (as identified on the deed), which we construe as matters relating to corporate designations and application of the secretary of state's naming conventions, rather than matters of standing. While those arguments may have impacted Harp's ability to challenge the service of process and obtain relief without modifying the deed, they didn't actually call into question Harp's ownership of the property.

¶ 11 Thus, we decline to consider the merits of Abdulhakeem's arguments challenging the Rule 60(b) order.[3]

### III. Recording Act Protection

¶ 12 Abdulhakeem also challenges the trial court's entry of summary judgment in favor of Harp on its quiet title claim. He contends that the court erred in concluding that, because the foreclosure judgment and sheriff's deed conveying the property to Welcome to Realty were void, Welcome to Realty and Abdulhakeem were not bona fide purchasers whose interests were protected by Colorado's recording act. He argues that the judgment and deed were *voidable,* rather than *void,* and thus could convey good title to a bona fide purchaser. We disagree.

¶ 13 We review de novo an order granting summary judgment. *Univ. of Denv.er v. Doe,* 2024 CO 27, ¶ 7. Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Id.*

---

[3] Because we decline to consider these arguments on the merits, we need not address Harp's response that Abdulhakeem lacks standing to raise the arguments.

¶ 14 "[A] judgment entered against a defendant without valid service of process violates due process of law and is void." *Namaste Judgment Enf't, LLC v. King*, 2020 COA 43, ¶ 18; *see also Goodman Assocs., LLC v. WP Mountain Props., LLC*, 222 P.3d 310, 315 (Colo. 2010) ("[A] default judgment entered by a court without personal jurisdiction over the defendant, e.g., due to an invalid service of process, is a nullity and without effect.").

¶ 15 Further, a sheriff's deed that results from a void judgment is itself void. *See C & C Invs., LP v. Hummel*, 2022 COA 42, ¶ 39 ("[I]f the trial court lacked jurisdiction, the judgment and resulting sheriff's deed must be set aside."). And "a void deed cannot pass title." *Upson v. Goodland State Bank & Tr. Co.*, 823 P.2d 704, 705 (Colo. 1992); *see also Delsas v. Centex Home Equity Co.*, 186 P.3d 141, 144 (Colo. App. 2008) ("A void deed is a nullity, invalid ab initio, or from the beginning, for any purpose. It does not, and cannot, convey title, even if recorded.").

¶ 16 Colorado's recording act, § 38-35-109, C.R.S. 2025, is a race-notice statute. The statute protects bona fide purchasers who buy property without notice of any claimed interests in the property. *Guar. Bank & Tr. Co. v. LaSalle Nat'l Bank Ass'n*, 111 P.3d 521, 523

(Colo. App. 2004). However, "[t]he interest of a good faith purchaser under a void deed is not protected." *Delsas*, 186 P.3d at 144; *see also Weber v. Williams*, 324 P.2d 365, 369 (Colo. 1958) ("[A] judgment rendered without service . . . is . . . void, and . . . all sales, or other proceedings had thereunder, are, as to all persons, irrespective of notice or bona fides, absolute nullities." (quoting *Great W. Mining Co. v. Woodmas of Alston Mining Co.*, 20 P. 771, 775 (Colo. 1888)).

¶ 17 Based on the trial court's determination that it lacked personal jurisdiction over Harp due to improper service of process, the court correctly concluded that the judgment and the deed resulting from the sheriff's sale were void, and not merely voidable. *See Namaste*, ¶ 18; *Goodman Assocs.*, 222 P.3d at 315; *C & C Invs.*, ¶ 39. Accordingly, regardless of whether Welcome to Realty or Abdulhakeem otherwise might have been considered bona fide purchasers, their interests were not protected by the recording act. *See Delsas*, 186 P.3d at 144; *Weber*, 324 P.2d at 369.

¶ 18 We reject Abdulhakeem's contrary arguments. To the extent that he reprises his argument challenging the trial court's Rule 60(b) ruling on the validity of the service of process, we decline to

consider it for the same reasons explained above. He also argues that nothing on the face of the sheriff's deed suggested there was any defect and, thus, that he should've been able to safely rely on that deed. We acknowledge that he was in the unfortunate position of bearing the loss when the foreclosure and sheriff's sale were unwound. But, as we've explained, the law protects property owners who aren't properly notified of foreclosure proceedings. *See Namaste*, ¶ 18; *Goodman Assocs.*, 222 P.3d at 315. And once the trial court determined that Harp was the owner and hadn't been properly served in the foreclosure case, it had no choice but to unwind the foreclosure and invalidate the sheriff's deed and any later deeds based on it. *See C & C Invs.*, ¶ 39; *Upson*, 823 P.2d at 705; *Delsas*, 186 P.3d at 144; *Weber*, 324 P.2d at 369.

## IV. Breach of the Warranty of Title

¶ 19 Next, Abdulhakeem challenges the trial court's entry of summary judgment in favor of Welcome to Realty on his claim for breach of the warranty of title. He contends that the court erred when it concluded that the special warranty deed Welcome to Realty conveyed to him didn't warrant against the defect caused by the voided foreclosure. Again, we disagree.

¶ 20    As before, we review de novo an order granting summary judgment, and summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Univ. of Denv.*, ¶ 7.

¶ 21    In Colorado, a grantor may convey property via various types of deeds, each of which provides different protections to the parties. *See* § 38-30-113, C.R.S. 2025. For example, under a general warranty deed, a grantor guarantees that they are "vested of [the] estate in fee simple with full power to convey, that the property is free of all encumbrances except as listed in the deed, and that the grantor will guarantee title and peaceful possession and will defend the grantee's title to the property." *Ford v. Summertree Lane Ltd. Liab. Co.*, 56 P.3d 1206, 1209 (Colo. App. 2002) (quoting *O'Brien v. Vill. Land Co.*, 794 P.2d 246, 251 (Colo. 1990)). As to the guarantee to defend title to the property, "the grantor [warrants that it] will defend the title to the property against all persons who may claim the title." § 38-30-113(4)(a)(III)(A).

¶ 22    In contrast, "[a] special warranty deed covenants against defects in title [that] arise by, through, or under the actions of the grantor. Under this limited warranty, the grantor is not liable for

11

defects based on events [that] occurred while the property was in the hands of a prior title holder." *Colo. Land & Res., Inc. v. Credithrift of Am., Inc.*, 778 P.2d 320, 323 (Colo. App. 1989). Thus, the guarantee to defend title to the property extends "only as against any persons claiming to hold title by, or through, the grantor." § 38-30-113(4)(a)(III)(B).

¶ 23 Welcome to Realty's purported conveyance of the property to Abdulhakeem was via a special warranty deed. Thus, Welcome to Realty was only liable for any defects based on events that occurred while it was the purported title holder. *See Colo. Land & Res.*, 778 P.2d at 323. But, as the trial court correctly concluded, the defect at issue — the failure to serve Harp in the foreclosure case — preceded Welcome to Realty's claimed interest in the property. Because the foreclosure judgment and the resulting sheriff's deed were void, Welcome to Realty never held legal title to the property. *See Namaste*, ¶ 18; *Goodman Assocs.*, 222 P.3d at 315; *C & C Invs.*, ¶ 39. And because Welcome to Realty never held legal title, no defect occurred while the property was in its hands such that it could be held liable under the special warranty deed. *See Colo. Land & Res.*, 778 P.2d at 323.

¶ 24    Abdulhakeem nonetheless argues that Welcome to Realty breached the covenant of seisin — that is, the promise that it owned and had the right to possession of the property. *See Bernklau v. Stevens*, 371 P.2d 765, 768 (Colo. 1962). He cites section 38-30-113(4)(a), which provides that general and special warranty deeds both include various covenants, including that the grantor has a fee simple estate and has the right to convey it. He also cites section 38-30-113(3), which provides that the form of deed used doesn't affect "the absolute nature of the fee simple conveyance of the property being conveyed"; in other words, it's not a "lesser estate or interest" simply because of the warranty language in the deed.

¶ 25    But as the Supreme Court of Texas explained in rejecting a similar argument, even if a deed contains a covenant of seisin, the limiting language in a special warranty deed "disclaims [the grantor's] liability for the alleged breach of that covenant." *Chi. Title Ins. Co. v. Cochran Invs., Inc.*, 602 S.W.3d 895, 901 (Tex. 2020). In Texas, as in Colorado, the use of a special warranty deed "[does] not affect the scope of [a] conveyance" but "[does] affect [the grantor's] liability for defects in its title" by "limit[ing] the scope of th[e] indemnity obligation to losses or injuries sustained by a failure or

defect in the grantor's title arising by, through, or under the grantor." *Id.* at 903. Applying that limitation in circumstances essentially identical to those here, where the grantor purchased property at a foreclosure sale and conveyed it to the grantee by special warranty deed before the foreclosure was voided, the court in *Chicago Title* held that the special warranty deed "limit[ed] the scope of [the grantor's] liability for a failure of title — including in the form of a breach of the covenant of seisin." *Id.* at 904. Thus, the court held, the grantor was not liable to the grantee for breach of the covenant of seisin. *Id.* at 906.

¶ 26 The same result applies under Colorado law. Although under section 38-30-113(4)(a), the special warranty deed in this case contained the covenant of seisin, it limited Welcome to Realty's liability for any breach of that covenant to claims arising during Welcome to Realty's purported ownership of the property. As one commentator put it, "A Colorado special warranty deed includes the same . . . statutory warranties as a general warranty deed; however, the warranty against encumbrances is limited to claims made by or through the grantor." Eben P. Clark, *Which Deed Should I Use?*, 48 Colo. Law. 34, 36 (Jan. 2019). Thus, "[t]here is no warranty against

claims made by or through prior owners or others." *Id.* And because the claim at issue in this case was raised by a prior owner, it didn't fall within the scope of the warranty.

¶ 27 Accordingly, we conclude that the trial court didn't err by rejecting Abdulhakeem's breach of the warranty of title claim.

## V. Unjust Enrichment

¶ 28 Abdulhakeem also challenges the trial court's rejection of his unjust enrichment claim against Welcome to Realty. We discern no error.[4]

¶ 29 Unjust enrichment claims require trial courts to "make extensive factual findings to determine whether a party has been unjustly enriched." *Lewis v. Lewis*, 189 P.3d 1134, 1140 (Colo. 2008). As a result, when a court bases its unjust enrichment ruling on facts developed at trial, we "afford[] deference to the trial court's discretion" and review its ruling for an abuse of discretion. *Redd Iron, Inc. v. Int'l Sales & Servs. Corp.*, 200 P.3d 1133, 1136 (Colo.

---

[4] Abdulhakeem doesn't develop any argument challenging the trial court's rejection of his unjust enrichment claim against Harp. We therefore don't consider that claim. *See Galiant Homes, LLC v. Herlik*, 2025 COA 3, ¶ 14.

App. 2008). A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair or when it misconstrues or misapplies the law. *Castillo v. Stem Sch. Highlands Ranch*, 2025 COA 88, ¶ 24.

¶ 30 Unjust enrichment is "a judicially-created remedy designed to undo the benefit to one party that comes at the unfair detriment of another." *Lewis*, 189 P.3d at 1141. To prevail on a claim for unjust enrichment, a plaintiff must prove three things: (1) the defendant received a benefit; (2) the benefit was at the plaintiff's expense; and (3) the circumstances make it unjust for the defendant to retain the benefit without compensating the plaintiff. *Id.*

¶ 31 As to the third element, "[t]he notion of what is or is not 'unjust' is an inherently malleable . . . standard." *DCB Constr. Co. v. Cent. City Dev. Co.*, 965 P.2d 115, 120 (Colo. 1998). To determine whether the circumstances are unjust, our supreme court has identified fact-specific tests that apply in some particular situations. *See, e.g., Lewis*, 189 P.3d at 1142-43 (outlining a test for analyzing the third factor in cases involving failed gifts or failed contracts between close family members or confidants); *DCB Constr.*, 965 P.2d at 122-23 (outlining a test for analyzing the third

16

factor when a tenant's contractor seeks to recover from a landlord). Outside of these situations, "[i]n the absence of a particularized test," courts "should analyze the intentions, expectations, and behavior of the parties to determine when retention of the benefit becomes unjust." *Hannon L. Firm, LLC v. Melat, Pressman & Higbie, LLP*, 293 P.3d 55, 59 (Colo. App. 2011), *aff'd*, 2012 CO 61.

¶ 32     The trial court correctly applied this test in assessing Abdulhakeem's unjust enrichment claim.[5] As to the first two elements, the trial court found that Welcome to Realty received a benefit (the net proceeds it retained from its sale of the property to Abdulhakeem for more than it had paid at the foreclosure sale) and that the benefit was at Abdulhakeem's expense (as Abdulhakeem paid the purchase price but didn't obtain valid title in the sale). Abdulhakeem doesn't challenge these findings.

---

[5] The trial court determined that Abdulhakeem could bring his unjust enrichment claim, notwithstanding the existence of an express contract between the parties, because the essential purpose of the contract had failed. *See Gravina Siding & Windows Co. v. Gravina*, 2022 COA 50, ¶¶ 35, 38. Because we are affirming the trial court's rejection of the claim due to Abdulhakeem's failure to establish the three required elements, we don't consider this issue.

¶ 33    However, as to the third element, the trial court found that Abdulhakeem hadn't established that it would be unjust for Welcome to Realty to retain the benefit it received.

¶ 34    In evaluating this element, the court considered evidence of the title insurance policy. Abdulhakeem asserts that, by doing so, the court violated the collateral source rule. We're not persuaded.

¶ 35    "Under Colorado's common law collateral source rule, '[c]ompensation or indemnity received by an injured party from a collateral source, *wholly independent of the wrongdoer and to which [the wrongdoer] has not contributed*, will not diminish the damages otherwise recoverable from the wrongdoer.'" *Ronquillo v. EcoClean Home Servs., Inc.*, 2021 CO 82, ¶ 13 (emphasis added) (alteration in original) (quoting *Colo. Permanente Med. Grp., P.C. v. Evans*, 926 P.2d 1218, 1230 (Colo. 1996)). "The policy underlying this rule [i]s that a tortfeasor should not benefit, in the form of reduced damages liability, from an injured party's receipt of collateral source benefits." *Wal-Mart Stores, Inc. v. Crossgrove*, 2012 CO 31, ¶ 10. "In other words, because it is solely the tortfeasor's responsibility to make the injured plaintiff whole, any benefits or gifts obtained from third-party 'collateral' sources accrue solely to the benefit of the

18

injured plaintiff and are irrelevant in fixing the amount of the tortfeasor's liability."  *Ronquillo*, ¶ 13.[6]

¶ 36    The trial court correctly determined that the title insurance policy was not "wholly independent of" Welcome to Realty, as Welcome to Realty "contributed" to the policy by procuring and paying for it in order to mitigate the risk of a defect in title.  *Id.* at ¶ 11.  Thus, the policy was not a collateral source that the court was barred from considering.  *See id.*; *see also Haueter v. Peguillan*, 586 P.2d 403, 404 (Utah 1978) (when sellers of real property procured a title insurance policy for the buyer, that same policy was reissued to the buyer's assignee, and the assignee suffered a loss covered by the policy, the sellers were not "so isolated from the insurance relationship as to bring the collateral source doctrine into play").  Instead, the court ruled, within its discretion, that "[b]ecause Welcome to Realty paid the title insurance policy

---

[6] Abdulhakeem doesn't claim any violation of the post-verdict collateral source rule codified in section 13-21-111.6, C.R.S. 2025.  Nor could he, as that statute only addresses the set-off of a damage award based on amounts received from collateral sources.  His argument relates instead to the common law rule concerning pre-verdict consideration of evidence of collateral sources.

19

premium . . . and the policy specifically indemnifies Abdulhakeem for the damages he alleges," the policy is "a circumstance that bears on the unjust enrichment claim."

¶ 37 The court then found that through their contract (which required Welcome to Realty to convey the property by special warranty deed and to purchase a title insurance policy) and the special warranty deed (which warranted title only against claims arising during Welcome to Realty's purported ownership), the parties "clearly and unambiguously shifted the risk of a defective title from Welcome to Realty to Mr. Abdulhakeem." Thus, the court found, "the parties bargained for the very risk [they] are litigating now (i.e., that the seller's title might prove defective due to events occurring before Welcome to Realty retained ownership of the [s]ubject [p]roperty)." The court also added that Abdulhakeem could "potentially be made whole through a title insurance claim," which he hadn't pursued but which might enable him to recover the $105,000 he'd paid for the property. In other words, according to the court, "[t]he parties expressly negotiated the risk of a title defect and Welcome to Realty provided a means of indemnification for that risk." The court therefore expressed that it "[could ]not find that

Welcome to Realty's retention of the proceeds from the sale [wa]s unjust under the circumstances."

¶ 38     We conclude that the trial court's findings are supported by the record.  Abdulhakeem takes issue with the court's finding that he hadn't filed a claim against the title insurance policy.  But he acknowledged as much through his testimony at trial:

> Q.    [D]id you made [sic] a claim under your title insurance policy to Land Title?
>
> A.    No, I didn't make anything.  I just told them that there is an issue, what's going on, check that for me.  And they said we will take the [sic] care of what's going on.
>
> . . . .
>
> Q.    Have you asked the title insurance company to pay you the $105,000 of your coverage protection under your title insurance policy?
>
> A.    No, I was asking them that I want them to get the land back to me.
>
> Q.    Has the title insurance company ever denied you a request to pay you the $105,000?
>
> A.    I didn't request that, so no.
>
> Q.    Okay.  Do you think you could request that here today?

21

A.   Not today maybe.  Let me see what will happen at this trial.

¶ 39   We also conclude that the trial court's decision that Welcome to Realty would not be unjustly enriched in keeping the sale proceeds was not manifestly arbitrary, unreasonable, or unfair.  See Redd Iron, 200 P.3d at 1136; Castillo, ¶ 24.  The court carefully weighed the parties' respective circumstances and made detailed findings regarding the equities in this case.  We therefore decline to disturb its judgment rejecting Abdulhakeem's unjust enrichment claim against Welcome to Realty.

## VI.   Appellate Attorney Fees

¶ 40   Finally, we consider — and reject — both appellees' requests to recover attorney fees for this appeal.

¶ 41   Harp seeks appellate attorney fees under section 13-17-102, C.R.S. 2025, arguing that Abdulhakeem's appeal lacks substantial justification.  We cannot conclude, however, that the appeal is so lacking in substantial justification as to warrant an award of attorney fees.  *See W. United Realty, Inc. v. Isaacs*, 679 P.2d 1063, 1069-70 (Colo. 1984) (a claim is not considered frivolous merely because it ultimately proves unsuccessful).  Nor did Harp explain in

22

its briefing why or how the appeal lacked substantial justification. *See* C.A.R. 39.1 (requiring the principal brief of a party seeking appellate attorney fees to "explain the legal and factual basis for an award of attorney fees"); *Sos v. Roaring Fork Transp. Auth.*, 2017 COA 142, ¶ 59 (rejecting an "undeveloped request" for appellate attorney fees). We therefore reject Harp's request for fees.

¶ 42 Welcome to Realty seeks appellate attorney fees under the terms of its contract with Abdulhakeem. But other than stating that the contract provides for an award of attorney fees to the prevailing party in "any . . . litigation relating to th[e] [c]ontract," it didn't develop its argument for fees. *See* C.A.R. 39; *Sos*, ¶ 59. For instance, Welcome to Realty didn't explain how this appeal "relate[d] to" the parties' contract. It also didn't explain why fees under the contract were warranted in light of the trial court's finding that the contract had failed. We therefore reject Welcome to Realty's request for fees.

¶ 43 To the extent that appellees seek recovery of their appellate costs, however, those are available under C.A.R. 39(a)(2).

VII.     Disposition

¶ 44 The judgment is affirmed.

JUDGE GROVE and JUDGE MOULTRIE concur.